UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ARGUS LEADER MEDIA, | ) | CIV. 11-4121-KES |
| d/b/a Argus Leader, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| UNITED STATES DEPARTMENT | ) | |
| OF AGRICULTURE, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Argus Leader Media, d/b/a Argus Leader, brought this claim

under the Freedom of Information Act (FOIA) to obtain information in the

possession of defendant, the United States Department of Agriculture (USDA).

Docket 1. After USDA provided some, but not all, of the requested information,

Argus Leader requested that a *Vaughn* Index be filed to explain why USDA did

not provide the withheld information. Docket 12. USDA resists that motion and

claims that a *Vaughn* Index is not necessary because USDA offered detailed

affidavits that sufficiently explained its decision to withhold the information.

Docket 15. USDA also moves for summary judgment and argues that its

decision to withhold redemption data was appropriate in this case because the

material was protected under exemption 3 to the FOIA and should not be

released. Docket 18. Argus Leader resists that motion and requests that the

redemption data be disclosed because that information is not what Congress

meant to exempt under the claimed statute. Docket 33. For the following reasons, USDA's motion for summary judgment is granted.

## BACKGROUND

The relevant facts of this dispute, viewed in the light most favorable to the nonmoving party on the motion for summary judgment, Argus Leader Media, d/b/a Argus Leader, are as follows:

On February 1, 2011, Argus Leader emailed a request for specific records to the email address for the Food and Nutrition Service (FNS), which is an agency of the USDA. USDA enforces the Food and Nutrition Act of 2008 (FNA or the Act) in addition to other statutes. The information that Argus Leader requested related to the Supplemental Nutrition Assistance Program (SNAP), or what was formerly known as the food stamp program. The request sought SNAP retail store records from 2005 through 2010 that included: each store's identifier or unique ID number, the store name, the store address, the store type, and the yearly redemption amounts or Electronic Benefit Transfer (EBT[1]) sales figures for each participating store. Docket 22 ¶ 11.

While FNS administers the FNA and its regulations and standards, the Benefit Redemption Division (BRD) is the component within FNS that oversees

---

[1] The term food stamps is the label for SNAP benefits that is most familiar to the public. Docket 21 ¶ 7. Many store owners or clients also know or understand their benefits as "EBT," and FNS often uses SNAP-EBT in its publications and information. Food stamps, SNAP, and SNAP-EBT all mean the same thing. Docket 21 ¶ 7.

the EBT system. Through the EBT system, SNAP recipients receive an EBT debit card that keeps track of their monthly benefits and is the object that gives them access to food and other qualifying items under SNAP. BRD also ensures that only those retailers that qualify to participate in SNAP do so, and it regulates the retailers who are not in compliance with the regulations and policies designated under the program. BRD is responsible for maintaining the EBT system in a manner that ensures it is responsive to its clients, the states it serves, and the federal government.

The specific requested data still at issue is redemption data—all other data was provided to Argus Leader or was deemed nonessential by Argus Leader. Redemption data is the dollar amount of goods that each retailer sells to SNAP beneficiaries and subsequently redeems from the federal government in a given year. It is one type of information that is generated and stored in a technology system overseen by BRD, which is called the Store Tracking and Redemption System (STARS). Redemption data is "only obtained when a retailer is authorized to accept SNAP cards and processes a SNAP transaction." Docket 21 ¶ 20. Redemption data, however, is only generated for each retailer during the time frame that the retailer would be authorized to participate in SNAP. For instance, if a SNAP retailer is authorized to participate in the program but makes no EBT sales, then the redemption data amount is $0. Docket 21 ¶ 21.

After receiving Argus Leader's request, FNS contacted BRD to collect the data that Argus Leader sought. BRD conducted a search within the STARS

3

database and gathered records that were pertinent to the request but not subject to a FOIA exemption. BRD produced a CD that contained 321,988 SNAP files viewable on a Microsoft Excel worksheet. FNS sent that CD and a letter to Argus Leader and explained that the agency was not including some of the requested information (like redemption data) because those records were exempt from disclosure pursuant to the Freedom of Information Act Exemptions 3 and 4 and 5 U.S.C. § 552(b)(3) and (b)(4). Docket 22 ¶ 15. FNS also informed Argus Leader of its right to appeal. Argus Leader contacted a representative for FNS and stated that it had received the letter, but the CD only contained 65,536 retailer records. Argus Leader also requested that FNS resend the information in a text format.

On March 3, 2011, Argus Leader submitted its appeal of FNS's decision to withhold the redemption data, which was filed with the FNS Freedom of Information Act Service Center within the Information Management Branch. The appeal worked its way through internal departments and eventually was submitted for legal review on April 13, 2011. On June 13, 2011, FNS received a letter from Argus Leader stating that it would initiate legal action under FOIA if it did not receive a response to its appeal within ten days. Docket 22 ¶ 26. On July 19, 2011, Argus Leader received an unofficial response from FNS via email that attempted to clarify why the requested information was withheld. Meanwhile, the appeal denial was working its way through the federal system

4

and was prepared for final signatures from those who could officially deny the appeal.

Argus Leader filed its complaint on August 26, 2011, and the denial of Argus Leader's appeal was never sent. Docket 1. Argus Leader moved for a *Vaughn* Index on March 5, 2012. Docket 12. USDA responded to that motion and stated that its reasons for the denial of specific discovery were already expressed in the documents submitted in this case, and a *Vaughn* Index was not necessary. Docket 15. USDA also moved for summary judgment on the issue of whether it needed to provide FNS numbers and redemption totals to Argus Leader. Docket 18. The parties reached a stipulation that the issue of FNS numbers was no longer relevant, and the only issue before the court was whether USDA had to provide Argus Leader with the redemption data for the five years requested. Docket 31. The court approved the stipulation. Docket 32. On May 23, 2012, Argus Leader filed its opposition to the motion for summary judgment and claimed that the redemption data was not the type of information that was intended to be withheld under exemption 3. Docket 33.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*

5

*Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

On a motion for summary judgment in a Freedom of Information Act case, the record is still viewed in the light most favorable to the nonmoving party to determine if issues of material fact remain in dispute to determine if "the moving party is entitled to judgment as a matter of law." *Mo. Coal. for the*

*Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1208 (8th Cir. 2008) (citations omitted). In FOIA cases, the agency has the burden to prove " 'that it has fully discharged its obligations under FOIA.' " *Id.* (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983))). "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Mace v. E.E.O.C.*, 37 F. Supp. 2d 1144, 1146 (E.D. Mo. 1999) (citations omitted). *See also Nielsen v. U.S. Bureau of Land Mgmt.*, 252 F.R.D. 499, 503 (D. Minn. 2008) ("Summary judgment is the preferred procedural vehicle for resolving FOIA disputes.") (citing *Evans v. U.S. Dep't of Personnel Mgmt.*, 276 F. Supp. 2d 34, 37 (D.D.C. 2003)).

## DISCUSSION

Argus Leader first argues that it is entitled to a *Vaughn* Index to understand USDA's explanation for the withholding of redemption data. USDA claims that the affidavits and other supporting documents have sufficiently stated its reasoning for denying the FOIA material, that the exemption being claimed is clear, and that an index is unnecessary. Argus Leader also claims that exemption 3 does not apply in this case because USDA cannot show that the claimed statute is a withholding statute or that the redemption data is the type of information that Congress meant to withhold under the claimed statute. USDA argues that § 2018(c) is clearly a withholding statute and that

redemption data is information within the purview of 7 U.S.C. § 2018(c); therefore, the requested data was properly withheld under exemption 3.

## I.     *Vaughn* Index

Argus Leader argues that it is entitled to a *Vaughn* Index, which is a detailed list or index of the material withheld by USDA and usually contains a precise rationale of the reasons for withholding. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). "Although there are instances where *Vaughn* index may be necessary for proper review, a *Vaughn* index is not required as a matter of course." *May v. I.R.S.*, Civ. No. 90-1123, 1991 WL 328041, at *2 (W.D. Mo. 1991) (citing *Barney v. I.R.S.*, 618 F.2d 1268, 1272 (8th Cir. 1980)). *See also Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 804 (9th Cir. 1996) ("[W]hen the affidavit submitted by an agency is sufficient to establish that the requested documents should not be disclosed, a *Vaughn* index is not required . . . Moreover, when a FOIA requester has sufficient information to present a full legal argument, there is no need for a *Vaughn* index.").

The typical *Vaughn* Index:

provides a specific factual description of each document sought by the FOIA requester. Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.

8

*Mo. Coal.*, 542 F.3d at 1209-10 (quoting *In re Dep't of Justice*, 999 F.2d 1302, 1306 (8th Cir. 1993)). *Vaughn* indices serve two purposes: (1) "to ensure an 'effectively helpless' party's right to information 'is not submerged beneath governmental obfuscation and mischaracterization,' " and (2) "to 'permit the court system effectively and efficiently to evaluate the factual nature of disputed information.' " *Mo. Coalition*, 542 F.3d at 1209 (citing *Vaughn*, 484 F.2d at 826).

"Generally, a more substantial *Vaughn* index-one that provides for each document requested a specific explanation as to why an exemption applies–is preferable to a bare bones index." *Mo. Coalition*, 542 F.3d at 1210. Although courts routinely conduct an in camera review of the documents at issue, such inspection should be limited because it is " 'contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court.' " *Barney*, 618 F.2d at 1272 (quoting *Cox v. U.S. Dep't of Justice*, 576 F.2d 1302, 1311 (8th Cir. 1978)). "If the material is fairly described and the reason for nondisclosure is adequately stated and supported by the law, the agency's position should be upheld without *in camera* inspection." *Mo. Coalition*, 542 F.3d at 1210 (citation omitted).

When analyzing whether an exemption to FOIA applies:

A court's primary role . . . is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position . . . . If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent

> with the applicable law, the district court should uphold the
> Government's position. The court is entitled to accept the
> credibility of the affidavits, so long as it has no reason to question
> the good faith of the agency.

*Barney*, 618 F.2d at 1272 (citing *Cox*, 576 F.2d at 1312). A *Vaughn* Index is not

mandatory, but "[i]f the Court cannot evaluate the propriety of the claimed

exemptions on the record before it, it may order the agency to submit more

detailed affidavits or a *Vaughn* index, or even review documents *in camera*."

*Gavin v. U.S. Sec. & Exch. Comm'n*, Civ. No. 04-4522, 2006 WL 2975310, at *2

(D. Minn. Oct. 16, 2006) (citing *Barney*, 618 F.2d at 1272; *Maricopa Audubon*

*Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 n.2 (9th Cir. 1997); *N.L.R.B. v.*

*Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). "Boilerplate or

conclusory affidavits, standing alone, are insufficient to show that no genuine

issue of fact exists as to the applicability of a FOIA exemption." *Mo. Coalition*,

542 F.3d at 1210 (citation omitted).

   The affidavits submitted in this case by Susan Modine, Jennifer

Weatherly, and Andrea Gold described redemption data in detail—how it is

gathered, used, and why it should remain withheld. USDA specifically stated

which exemptions to FOIA prevented disclosure and also discussed 7 U.S.C.

§ 2018, the statute that enumerates why the redemption data must be

protected. And the remaining data associated with the redemption data, like

store name and other identifiers, was already provided to Argus Leader.

Moreover, this is the type of case where a *Vaughn* Index would not improve

10

Argus Leader's specific factual understanding of the documents sought because both parties know what is sought, and the redemption information is not a mystery to the agency or the requester. The information is a monetary amount that is redeemed each year for the grocery or wholesale food store in question. This is not the sort of information where a *Vaughn* Index would give the requester useful information that would help with the litigation because the information is a number and nothing more.[2]

The affidavits and briefs in support of USDA's motion were sufficient information for Argus Leader to make its legal argument and sufficient to aid the court in its legal determinations in this case. *See Mo. Coalition*, 542 F.3d at 1210 ("Such an index allows both the district court and the requesting party to evaluate the decision to withhold records and ensure compliance with FOIA."); *see also Miller*, 779 F.2d at 1387 (finding that an agency meets its burden by offering affidavits that explain why the documents were subject to an exemption). For these reasons, Argus Leader's request for a *Vaughn* Index is denied because it is unnecessary and duplicative in this case.

---

[2] Because the information requested, redemption data, is one number for each store, the court finds that this information is not the type that is segregable. "In every case, the district court must make an express finding on the issue of segregability." *Missouri Coalition*, 542 F.3d at 1212 (citations omitted). The court finds that USDA already provided to Argus Leader the information that could be separated without triggering protection under the exemption and that the redemption data was reasonably separated from the remainder of the information at that time.

Now the court will analyze whether USDA properly withheld the redemption data under exemption 3, whether 7 U.S.C. § 2018 is properly classified as a withholding statute, and if redemption data is intended to be withheld under that statute.

## II.  Freedom of Information Act

" 'Congress intended FOIA to permit access to official information long shielded unnecessarily from public view.' " *Hulstein v. Drug Enforcement Admin.*, 671 F.3d 690, 694 (8th Cir. 2012) (quoting *Milner v. Dep't of Navy*, ___ U.S. ____, 131 S. Ct. 1259, 1262 (2011)). "FOIA generally mandates broad disclosure of government records." *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1146 (8th Cir. 2011) (citations omitted). FOIA requires that an agency offer records upon request unless they are the sort of records protected by one of the nine exemptions under the Act. *Milner*, 131 S. Ct. at 1262. The exemptions "are to be narrowly construed to ensure that disclosure, rather than secrecy, remains the primary objective of the Act." *Mo. Coalition*, 542 F.3d at 1208 (citations omitted). The district court engages in a de novo review of an agency's decision to deny a request for information under FOIA, and the burden[3] is upon the agency to show that the specific exemption applies. 5 U.S.C. § 552(a)(4)(B); *In re Dep't of Justice*, 999 F.2d 1302, 1305 (8th Cir. 1993).

---

[3] The agency retains the burden of justifying its decision to withhold any documents in light of the purposes of FOIA and to promote public access to government documents. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citations omitted).

12

The exemption presently at issue is commonly known as FOIA exemption 3. This exemption exempts from disclosure matters that are precluded from release by another statute, if that statute either:

> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3)(A). "When determining whether FOIA exemption 3 is applicable, the court first decides if a statute is a withholding statute and then determines 'whether the information sought after falls within the boundaries of the non-disclosure statute.' " *Cent. Platte*, 643 F.3d at 1146 (quoting *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 332 (D.C. Cir. 1987)). "Exemption 3 is different from other FOIA exemptions because 'its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage.' " *Id.* (citing *Goland v. C.I.A.*, 607 F.2d 339, 350 (D.C. Cir. 1978)).

USDA argues that 7 U.S.C. § 2018, which discusses the approval of retailers' participation in SNAP, is the withholding statute applicable to this case. The Eighth Circuit Court of Appeals has not expressly ruled upon whether § 2018 qualifies as an exempting or withholding statute under the two-part criteria mandated by § 552(b)(3), nor have any other district courts within

13

the Eighth Circuit or elsewhere. First, the court must determine whether § 2018 is properly characterized as a withholding statute.

### A.     Withholding Statute

Because the court must determine whether the statute is a withholding statute that meets the requirements of exemption 3, the focus is whether there is clear language within § 2018 that "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or provides criteria for withholding the information. 5 U.S.C. § 552(b)(3)(A)(i)-(ii). "To determine whether a statute is a withholding statute that prohibits disclosure, the court looks at the language of the statute on its face." *Zanoni v. U.S. Dep't of Agric.*, 605 F. Supp. 2d 230, 236 (D.D.C. 2009) (citing *Reporters Comm. for Freedom of Press v. U.S. Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987)). The language of the statute at issue provides:

> (c) Information submitted by applicants; safeguards, disclosure to and use by State agencies
>
> **Regulations issued pursuant to this chapter shall require an applicant retail food store or wholesale food concern to submit information, which may include relevant income and sales tax filing documents, which will permit a determination to be made as to whether such applicant qualifies, or continues to qualify, for approval under the provisions of this chapter or the regulations issued pursuant to this chapter.** The regulations may require retail food stores and wholesale food concerns to provide written authorization for the Secretary to verify all relevant tax filings with appropriate agencies and to obtain corroborating documentation from other sources so that the accuracy of information provided by the stores and concerns may be verified. **Regulations issued pursuant to this chapter shall provide for safeguards which limit the use or disclosure of information**

> **obtained under the authority granted by this subsection to purposes directly connected with administration and enforcement of the provisions of this chapter** or the regulations issued pursuant to this chapter, except that such information may be disclosed to and used by Federal law enforcement and investigative agencies and law enforcement and investigative agencies of a State government for the purposes of administering or enforcing this chapter or any other Federal or State law and the regulations issued under this chapter or such law, and State agencies that administer the special supplemental nutrition program for women, infants and children, authorized under section 17 of the Child Nutrition Act of 1966 [42 U.S.C.A. § 1786], for purposes of administering the provisions of that Act [42 U.S.C.A. § 1771 et seq.] and the regulations issued under that Act. **Any person who publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by Federal law (including a regulation) any information obtained under this subsection shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.** The regulations shall establish the criteria to be used by the Secretary to determine whether the information is needed. The regulations shall not prohibit the audit and examination of such information by the Comptroller General of the United States authorized by any other provision of law.

7 U.S.C. § 2018(c) (emphasis added).

The specific section that states that "[a]ny person who publishes, divulges, discloses, or makes known . . . any information obtained under this subsection shall be fined . . . or imprisoned[,]" directs that disclosure of information is prohibited and gives little discretion to the agency as to how the information can be disseminated. 7 U.S.C. § 2018(c). Further, the language that gives the agency authority to promulgate regulations purports "to provide for safeguards which limit the use or disclosure of information obtained under the authority granted by this subsection[.]" Additionally, the only time that it is acceptable to release information obtained under the statute is if it is either for

15

administrative or enforcement purposes or to investigate criminal activity. That restriction and the statutory language that discusses safeguarding or punishment for releasing information is the type of language that, on its face, is indicative of a withholding statute. *See* 5 U.S.C. § 552(b)(3) (requiring "that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]").

Additionally, Argus Leader does not specifically deny that § 2018 qualifies as a withholding statute; rather, its focus is that redemption data is not the type of information that was meant to be withheld under § 2018. Argus Leader admits that the language within § 2018 "arguably suffices to cross the Exemption 3's threshold." Docket 33 at 8. This admission, coupled with the plain language of the statute, leads to the conclusion that § 2018 would qualify as a withholding statute under exemption 3. The next inquiry is whether the yearly redemption data is the sort of information that Congress meant for USDA to withhold under the plain language of § 2018.

### B.    Information Within the Scope of Withholding Statute

Second, the court must determine whether the information sought after falls within the boundaries of the non-disclosure statute. The language of the statute at issue states that those food retail stores or wholesale food concerns that  wish to participate in SNAP must "submit information, which may include relevant income and sales tax filing documents[.]" 7 U.S.C. § 2018(c). It is

immediately following this language that the first mention of withholding of information occurs within the statute. "Regulations issued pursuant to this chapter shall provide for safeguards which *limit the use or disclosure of information **obtained** under the authority granted by this subsection* to purposes directly connected with administration and enforcement of the provisions of this chapter . . .," except information provided to Federal or state law enforcement and investigative agencies. 7 U.S.C. § 2018(c) (emphasis added). The statute then describes the criminal punishment for any person who discloses, publishes, divulges, or makes known "*any information* **obtained** under this subsection."

The type of information that is to be withheld under the plain language of the statute is *any information*, which can include "relevant income and sales tax filing documents," that the federal government receives from a SNAP participant or a verifying agency or source. Thus, the precise question is whether redemption data or the amount of money that each store makes through SNAP purchases would satisfy any of these types of "information" noted in the statute or information that was obtained from a verifying agency via § 2018 authority.

Redemption data is the amount of SNAP benefits that are redeemed at a store in a given year, thus, the amount of money that the United States government credits to that retailer's bank account in a given year. SNAP beneficiaries have an EBT card, which acts similar to a debit card to purchase eligible food at certain stores authorized by FNS. For a transaction to occur, the

17

customer swipes the EBT card in a point-of-sale device just like a debit card and enters a four-digit personal identification number. Docket 20 ¶ 9. The retail clerk enters the amount of the purchase into the point-of-sale device and as long as the customer has sufficient balance to cover the cost, that amount is deducted[4] from the customer's EBT-SNAP account.

SNAP redemption data is either gathered by state EBT vendors or by subcontractors who provide the service. Docket 21 ¶¶ 19-20. State EBT vendors track and monitor SNAP benefit accounts, process any transactions, and eventually facilitate payment to the retail locations. Docket 21 ¶ 20. EBT vendors send files of all SNAP transactions to FNS, and retailers are identified solely by their unique FNS number. This information is loaded in the STARS database for sorting and filing and becomes the official record or redemption data for each retailer. Docket 21 ¶ 20. Soon after the customer's initial purchase, usually within two days, that same amount is credited to the retailer's bank account as redemption for the sale. Docket 20 ¶ 9. "This credit to the retailer's bank account is what" is known as redemptions. Docket 20 ¶ 9.

The way that FNS and other federal agencies use redemption data is to monitor compliance by participating retailers because excessive redemption

---

[4] The point-of-sale device communicates with a processor to electronically verify that the FNS number, or the unique identifier for that retailer within the SNAP and STARS database, is active and valid and that the customer has a sufficient balance to cover the purchase. Docket 21 ¶ 18. If either the FNS number is invalid or the balance is insufficient, then the transaction is denied at the point-of-sale. If both are accepted, then the transaction is authorized.

amounts could be indicative of potential participation violations or could be a cause for sanctions. Docket 21 ¶ 21. FNS also uses redemption data to identify and remove retailers that are no longer actively participating in SNAP. "Redemption records are also an important element in the overall process of reconciling federal funds expended for SNAP." Docket 21 ¶ 21. Redemption data is inherently tied to FNS numbers or the unique identifying number assigned to retailers by FNS. All redemption data is attached to the retailer via that FNS number and the number is needed to process the original transaction and its subsequent repayment. Docket 21 ¶ 21.

USDA claims that "SNAP redemption data may only be disclosed as allowed by statute and that disclosure is limited to use connected with administration and enforcement of the provisions of the FNA or regulations issued pursuant to the FNA." Docket 21 ¶ 21. At specific points, the language of § 2018 refers to *any* information, or information obtained under the subsection, or "relevant income and sales tax filing documents." Redemption data is more than likely included under all three of those descriptions.

The language of § 2018 requires that applicants in SNAP submit information, including relevant income and sales tax filing documents, that allows the government to determine if the applicant qualifies or continues to qualify for participation in the SNAP program. This type of information, especially to determine if a retailer *continues to* qualify for SNAP participation, includes the amount of income (redemption data) each retailer derived from

19

SNAP and the federal government. The government also has to verify tax information, which includes yearly income such as the redemption amount or benefits redeemed and paid to each retailer by the government. Although Congress has not expressly deemed redemption information as essential data to be included under § 2018, the statutory language encompasses this type of income and tax information because redemption data naturally falls under either term's broad umbrella. Because § 2018 is a withholding statute and redemption data is the type of information reached by the plain language of the statute, it was appropriate for USDA to withhold said data under exemption 3 in light of the fact that the Argus Leader is not a state or federal law enforcement agency and was not conducting an internal agency audit.

Argus Leader argues that the redemption data is not included under § 2018 because that information is collected by state or outside businesses, who then send it to USDA and its subsidiaries to insert into the STARS system. Argus Leader claims that because the information is not provided by the retailers who are applicants for new or continued participation in SNAP, it is not included as "information" under § 2018. Argus Leader also asserts that because there is no request for redemption data on the application form for SNAP participation, the redemption data is outside the purview of the statute and not exempt under exemption 3. The court disagrees. As previously discussed, redemption data is the type of information that can be obtained under the authority of § 2018. The amount of EBT benefits a store provides or

20

for which it is reimbursed is the type of information that retailers give to the federal government to continue its participation in SNAP or to renew its previously expired participation.

Because Congress established narrow criteria for when information under § 2018 could be released and redemption data is included under Congress's broad description of what constitutes "information" under § 2018, the redemption data was properly withheld. There are no genuine disputes of material fact. The court finds that USDA's decision to withhold the requested information was reasonable and exemption 3 applies; therefore, summary judgment is appropriate.

### C.    Legislative History

The court can also consider the legislative history of § 2018 in its consideration of whether the redemption data is the type that is meant to be withheld under exemption 3. *See N.L.R.B.*, 437 U.S. at 223-34 (looking to the legislative history to confirm the court's observation regarding the application of an exemption to FOIA). The legislative history of § 2018, which was amended in 1994 to expand the release of otherwise withheld information to law enforcement entities only, lends additional support to the court's conclusion that the redemption data was properly withheld.

Before the 1994 amendment to the Food Stamp Act of 1977, release of information under § 2018 was extremely restrictive. The purpose of the amendment was to "permit[] the use and disclosure of information provided by

21

stores to State and Federal law enforcement and investigative agencies for the purposes of administering or enforcing the Food Stamp Act or any other Federal or State law and establishes penalties against persons who misuse any of the information[.]" Food Stamp Program Improvements Act of 1994, Pub. L. No. 103-225, H.R. Rep. No. 103-352, 1994 U.S.C.C.A.N. 39, 40. Prior to the 1994 amendment, the use of any of that information was restricted "to persons directly connected with the administration and enforcement of the Food Stamp Program" or those who administered WIC. *Id.* This language further demonstrates that all types of information that relate to tax, income, or redemption data that is correlated with participation in SNAP is to be withheld in all instances except internal administrative purposes or for law enforcement's use.

Under the plain language of § 2018, not only is the statute a withholding statute, but Congress intended to exempt redemption data from disclosure. For that reason, USDA has carried its burden and shown that exemption 3 applies to this case, and the agency properly withheld information that was covered under one of the narrow exemptions to the FOIA. *See Ray*, 502 U.S. at 173 ("Consistent with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."). There are no genuine issues of material fact in dispute, and summary judgment is appropriate.

22

## CONCLUSION

Because USDA submitted detailed affidavits and briefs in support of its motion for summary judgment that justified its denial of the release of the redemption data records, the court finds that it is unnecessary and duplicative to require USDA to submit a *Vaughn* Index under the facts of this case. USDA has shown that § 2018 is a withholding statute under exemption 3 to the Freedom of Information Act. The plain language of the statute and its legislative history also indicates that redemption data is the type of information that was meant to be withheld under § 2018. USDA's decision to withhold the information was proper. Accordingly, it is

ORDERED that Argus Leader's motion for a *Vaughn* Index (Docket 12) is denied.

IT IS FURTHER ORDERED that USDA's motion for summary judgment (Docket 18) is granted.

Dated September 27, 2012.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

23