UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ARGUS LEADER MEDIA, d/b/a Argus Leader<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendant. | 4:11-CV-04121-KES<br><br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Argus Leader Media, d/b/a Argus Leader, brought this action under the Freedom of Information Act (FOIA) against defendant, United States Department of Agriculture (USDA), seeking disclosure of information related to the Supplemental Nutrition Assistance Program (SNAP), formerly known as the food stamp program. Docket 1. USDA moves for summary judgment and argues that its decision to withhold information is supported by exemptions 4 and 6 to the FOIA. Docket 61. Argus Leader resists USDA's motion and argues neither exemption applies. Docket 73. For the following reasons, USDA's motion for summary judgment is denied.

## BACKGROUND

The facts viewed in the light most favorable to Argus Leader are as follows:

On February 1, 2011, Argus Leader made a FOIA request for documents from the Food and Nutrition Service (FNS), which is an agency of the USDA. FNS administers the Food and Nutrition Act of 2008 and other federal statutes designed to facilitate the operation of SNAP. Argus Leader's request for information sought SNAP retail store records from 2005 through 2010 that included: each store's identifier or unique ID number, the store name, the store address, the store type, and the yearly redemption amounts or Electronic Benefit Transfer (EBT[1]) sales figures for each participating store. Docket 60 at 3. At this point in the litigation, Argus Leader only seeks information about the yearly redemption amounts paid to each participating store. All other data was either provided to Argus Leader or deemed nonessential by Argus Leader.

The Benefit Redemption Division (BRD), a component within FNS, oversees an EBT system which allows SNAP beneficiaries to use their SNAP benefits at participating retailers. Through the EBT system, BRD is able to track each SNAP beneficiary's account and ensure that each retailer is paid for SNAP purchases. The EBT system functions like other debit cards. A SNAP beneficiary is given an EBT card. At checkout, the SNAP beneficiary swipes his or her EBT card on the store's point-of-sale device. The device then communicates with a processor and electronically verifies that the retailer is a SNAP participant and that the SNAP beneficiary has a sufficient balance in his

---

[1] The term food stamps is the label for SNAP benefits that is most familiar to the public. Docket 21 ¶ 7. Many store owners or clients also know or understand their benefits as "EBT," and FNS often uses SNAP-EBT in its publications and information. Food stamps, SNAP, and SNAP-EBT all mean the same thing. Docket 21 ¶ 7.

2

or her account to cover the purchase. If the retailer is not a SNAP participant or there are insufficient funds in the beneficiary's account, the transaction is denied at the point-of-sale.

All of the SNAP payment information that is generated is stored in a technology system overseen by BRD called the Store Tracking and Redemption System (STARS). Redemption data is obtained only when a retailer is authorized to accept SNAP cards and processes a SNAP transaction. Redemption data is generated for each retailer only during the time frame that the retailer would be authorized to participate in SNAP. The STARS system keeps track of the total amount of EBT dollars spent at a participating SNAP retailer in a given year. For instance, if a SNAP retailer is authorized to participate in the program but makes no EBT sales, then the redemption data amount is $0. Argus Leader seeks to recover this store specific data.

On February 1, 2011, Argus Leader made its request for documents from FNS. After receiving Argus Leader's request, FNS contacted BRD to collect the data that Argus Leader sought. BRD conducted a search within the STARS database and gathered records that were pertinent to the request but not subject to a FOIA exemption. BRD produced a CD that contained 321,988 SNAP files viewable on a Microsoft Excel worksheet. FNS sent that CD and a letter to Argus Leader and explained that the agency was not including some of the requested information (like redemption data) because those records were exempt from disclosure pursuant to the FOIA exemptions 3 and 4, codified at 5 U.S.C. § 552(b)(3) and (b)(4). Docket 22 ¶ 15. FNS also informed Argus Leader

of its right to appeal. Argus Leader contacted a representative for FNS and stated that it had received the letter, but the CD only contained 65,536 retailer records. Argus Leader also requested that FNS resend the information in a text format.

On March 3, 2011, Argus Leader appealed FNS's decision to withhold the redemption data to the FNS Freedom of Information Act Service Center within the Information Management Branch. The appeal worked its way through internal departments and eventually was submitted for legal review on April 13, 2011. On June 13, 2011, FNS received a letter from Argus Leader stating that it would initiate legal action under FOIA if it did not receive a response to its appeal within ten days. Docket 22 ¶ 26. On July 19, 2011, Argus Leader received an unofficial response from FNS via email that attempted to clarify why the requested information was withheld. Meanwhile, the appeal denial was prepared for final signatures from those who could officially deny the appeal.

Argus Leader filed its complaint in this court on August 26, 2011, and the denial of Argus Leader's administrative appeal was never sent. Docket 1. USDA moved for summary judgment on the issue of whether it needed to provide FNS numbers and redemption totals to Argus Leader. Docket 18. The parties stipulated that the issue of FNS numbers was no longer relevant and the only issue remaining before the court was whether USDA had to provide Argus Leader with the redemption data for the five years requested. Docket 31. The court approved the stipulation. Docket 32. On May 23, 2012, Argus Leader filed its opposition to the motion for summary judgment with regard to the

remaining issue and claimed that the redemption data was not the type of information that was intended to be withheld under exemption 3 to the FOIA. Docket 33. The court ruled in favor of USDA and found that exemption 3 applied to the requested data. On March 25, 2014, the Eighth Circuit Court of Appeals reversed and held that exemption 3 did not apply. Docket 44.

After the Court of Appeals' ruling, the USDA published a request for information in the Federal Register on August 4, 2014. FNS contacted SNAP retailers to determine whether SNAP retailers thought disclosure of aggregated SNAP redemption data for individual stores should be disclosed. Of the 321,988 potential SNAP retailers contacted, only 323 responded, and 73 percent of respondents were opposed to disclosing individual store redemption data.

USDA followed up with fifteen SNAP retailers that filed affidavits stating why individual store redemption amounts should not be disclosed. Affiants stated the disclosure of individual store data could cause predatory competition, put a stigma on SNAP retailers, and cause other commercial harms. After receiving this data, USDA filed its second motion for summary judgment arguing that exemptions 4 and 6 to the FOIA applied to the requested information. Docket 58; Docket 61.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the

5

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

On a motion for summary judgment in a FOIA case, the record is still viewed in the light most favorable to the nonmoving party to determine if issues of material fact remain in dispute and to determine if "the moving party is

6

entitled to judgment as a matter of law." *Mo. Coal. for the Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1209 (8th Cir. 2008) (citations omitted). In FOIA cases, the agency has the burden to prove " 'that it has fully discharged its obligations under FOIA.' " *Id.* (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

## DISCUSSION

" 'Congress intended FOIA to permit access to official information long shielded unnecessarily from public view.' " *Hulstein v. Drug Enf't Admin.*, 671 F.3d 690, 694 (8th Cir. 2012) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)). "FOIA generally mandates broad disclosure of government records." *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1146 (8th Cir. 2011) (citations omitted). FOIA requires that an agency offer records upon request unless they are the sort of records protected by one of the nine exemptions under the Act. *Milner*, 562 U.S. at 565. The exemptions "are to be narrowly construed to ensure that disclosure, rather than secrecy, remains the primary objective of the Act." *Mo. Coalition*, 542 F.3d at 1208 (citations omitted). The district court engages in a de novo review of an agency's decision to deny a request for information under FOIA, and the burden[2] is upon the agency to show that the specific exemption applies. 5 U.S.C. § 552(a)(4)(B); *In re Dep't of Justice*, 999 F.2d 1302, 1305 (8th Cir. 1993).

---

[2] The agency retains the burden of justifying its decision to withhold any documents in light of the purposes of FOIA and to promote public access to government documents. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citations omitted).

I.   **Exemption 4**

USDA argues it is not required to disclose yearly redemption amounts for individual SNAP retailers because such information would be "commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). The Eighth Circuit Court of Appeals has explained that exemption 4 applies to "information which is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." *Brockway v. Dep't of Air Force*, 518 F.2d 1184, 1188 (8th Cir. 1975). Information is confidential if "disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Contract Freighters, Inc. v. Sec'y of U.S. Dep't of Transp.*, 260 F.3d 858, 861 (8th Cir. 2001) (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)).[3] This test, which the Eighth Circuit Court of Appeals adopted, is commonly known as the *National Parks* test. This test "has been widely recognized and applied by the circuit courts when construing Exemption 4." *Id.*

---

[3] Another test is used if the person or entity submitting information is doing so voluntarily. That test is inapplicable here, however, because SNAP retailers are required to disclose EBT data if they want to be compensated. *See Martin Marietta Corp. v. Dalton,* 974 F. Supp. 37 (D.D.C. 1997) (holding a bid to do government work is not voluntary under exemption 4 because the bid must be submitted in order to win the contract).

In its most recent opinion about exemption 4, the Eighth Circuit Court of Appeals stated, "To claim an exemption [under exemption 4], an agency must 'provide affidavits which justify the claimed exclusion of each document by correlating the purpose for exemption with the actual portion of the document which is alleged to be exempt.' " *Madel v. U.S. Dep't of Justice*, 784 F.3d 448, 452 (8th Cir. 2015) (quoting *Miller*, 779 F.2d at 1387 (8th Cir. 1985)). "[G]eneralized allegations cannot establish that disclosure of financial reports would cause substantial competitive harm." *Contract Freighters*, 260 F.3d at 863. If each element of the exemption is not met, then the exemption does not apply.

When viewing the facts in a light most favorable to Argus Leader, summary judgment must be denied. Under the *National Parks* test, USDA must show that disclosure of an individual store's yearly redemption data is likely "to cause substantial harm to the competitive position" of the individual store. Because USDA received a small percentage of responses from SNAP retailers, there is evidence that supports the inference that the majority of SNAP retailers are not concerned about any competitive harm that might stem from the disclosure of individual store data. A reasonable fact-finder could also find that a number of factors influence marketplace competition and that simply disclosing the amount of EBT dollars spent at a particular location is not sufficient to influence the marketplace. Because there is a reasonable dispute as to whether the disclosure of individual store redemption data is likely to

cause substantial competitive harm to SNAP retailers, summary judgment is denied.[4]

## II. Exemption 6

USDA further argues that exemption 6 applies to at least "individual retailer redemption data of sole proprietor and closely held corporations . . . ." Docket 61 at 31. Under 5 U.S.C. § 552(b), government agencies may decline to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." As explained by the Eighth Circuit Court of Appeals, the heart of the analysis is a balancing test between "the privacy interest of the individual against the public interest in disclosure." *Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1185 (8th Cir. 2000); *see also Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-33 (D.C. Cir. 2008) (using a four step analysis that balances the individual's privacy interest against the public's interest in disclosure). USDA argues disclosure of individual store redemption data could reveal private information about "at least a portion of the owner's personal finances" and that disclosure could also cause competitive harm to these businesses. Docket 61 at 33 (quoting *Multi Ag Media*, 515 F.3d at 1229-30). USDA also argues that such disclosure outweighs the public's interest because the public already has

---

[4] It should be noted that the disclosure of individual store redemption data may not affect each store in the same way. For example, disclosing individual store data to the public could benefit certain SNAP retailers. Therefore, USDA must specifically state how the disclosure of SNAP data could adversely affect specific stores.

access to redemption data broken down into region, state, county, and zip code (when available). *Id.* at 35.

When viewing the facts in the light most favorable to Argus Leader, summary judgment cannot be granted. There is evidence that the public's interest in disclosure outweighs the individual's privacy. For example, disclosure of individual store redemption data does not disclose individual finances because the data would not disclose what percentage of the retailer's sales are credited to SNAP or how much the retailer profits after deducting expenses. *See Multi Ag Media*, 515 F.3d at 1229-33. Additionally, as stated above, a reasonable fact-finder could conclude that there is no threat of competitive harm with the disclosure of individual store data. Also, there is a great public interest in full disclosure of the parameters of the SNAP program. When weighing the interests of retailers against the public's interest in a transparent government, the latter prevails. Thus, summary judgment is denied as to exemption 6.

## CONCLUSION

Because questions of fact remain on the issues of whether substantial competitive harm is likely if individual store redemption data is disclosed and whether individual privacy interests outweigh the public's interest in a transparent government, summary judgment is denied. Accordingly it is

ORDERED that USDA's motion for summary judgment (Docket 58) is denied.

Dated September 30th, 2015

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
