UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

---

A<small>RGUS</small> L<small>EADER</small> M<small>EDIA</small>, <small>DBA</small> *A<small>RGUS LEADER</small>*,

                                Plaintiff,        Case No.:  11-4121

                                *v.*                     **PLAINTIFF'S**
                                                    **PRETRIAL SUBMISSIONS**

U<small>NITED</small> S<small>TATES</small> D<small>EPARTMENT OF</small> A<small>GRICULTURE</small>

                                Defendant.

---

      Plaintiff, *Argus Leader* [*Argus*], by and through its attorney, Jon E. Arneson, provides the Court and Defendant [USDA] with these pretrial submissions[1]:

**1. <u>List of witnesses and summary (prospective):</u>**

- Jonathan Ellis - an *Argus* reporter, will testify about the *Argus's* FOIA request in this case; USDA's RFI; materials discoverable on internet, the public interest in disclosure.

- Dr. Richard Volpe - Assistant Professor, Agribusiness Department, California Polytechnic State University, San Luis Obispo, CA, will present an expert opinion related to USDA's exemption 4 defense.

- Dr. Ryan Sougstad - Associate Professor of Business Administration, Augustana College, Sioux Falls, SD, will present an expert opinion related to USDA's exemption 4 defense.

---

[1] Since the FOIA defendant [USDA] has the burdens of production and persuasion, *Argus* cannot

**2. Plaintiff's pretrial conference attorney:**

   Jon E. Arneson, 605-335-0083.

**3. Proposed Stipulations:**

- USDA is furnishing a proposed stipulation signed by both parties which narrows the issue in this case to a determination whether the requested information is exempt from disclosure under 5 U.S.C. §552(b)(4) [FOIA exemption 4].
- Attached hereto is *Argus's* "proposed stipulation of facts" for USDA's consideration.

**4. Issues of law expected to be contested:**

The sole remaining issue in this case—as evidenced by the parties' stipulation—is whether the record of the annual amounts that the Government pays to individual SNAP retailers voluntarily participating in the program is exempt from the disclosure under FOIA exemption 4.

To insure that the list of contested legal issues is complete, it is worthwhile to identify the matters that are, presumably, uncontested. *Argus* and USDA appear to agree that fundamental FOIA legal principles apply. *U.S. Dept. of State v. Ray*, 502 U.S. 164, 173 (1991) (confirming that the agency has the burden of proving that Exemption 4 applies); *Cent. Platte Nat. Res. Dist. v. USDA,* 643 F.3d 1142, 1146 (8th Cir. 2011) ("FOIA generally mandates broad disclosure of government records."); *Mo. Coal. for the Env't Found v. U.S. Army Corps of Eng'rs,* 542 F.3d 1204, 1208 (8th Cir. 2008) (Holding that all FOIA exemptions "are to be narrowly construed to ensure the disclosure, rather than secrecy, remains the primary objective of the Act.")

Furthermore, it is undisputed that USDA had the burden of production and persuasion and is compelled to prove that existing and predictive facts establish the exemption 4 legal standard has been met. Under the applicable FOIA exemption 4 test, the agency refusing to disclose requested information must clearly demonstrate:

   a. that the the requested information is "commercial or financial;"
   b. that it is "obtained from a person" and
   c. that it is "confidential," which means disclosure is "likely to cause substantial harm to the competitive position of the person from whom the information was obtained.

*Contract Freighters, Inc. v. Sec'y of U.S. Dep't of Transp.,* 260 F.3d 858, 861 (8th Cir. 2001); *Nat'l Parks & Conservation Ass'n v. Morton* 498 F.2d 765, 770 (D.C. Cir. 1974).

Ascertaining the applicability of FOIA exemption 4 presents a mixed question of fact and law. *Argus* expects there to be disagreement on the following issues:

- <u>Does the requested information in this case—government program payment records—even merit an exemption 4 examination?</u>

*Argus'* position is that FOIA exemption 4 was not intended to conceal from the public the amounts businesses are paid under government programs. The principal authority for this proposition is the pragmatic comparison of the nature of the "information" in this case with the type of information normally at the core of exemption 4 arguments. There is a noticeable dearth of exemption 4 case law involving attempts to hide government payments to those in the private sector who have chosen to do business with the government—within a program or under contract.

- o *Judicial Watch, Inc. v. Export-Import Bank,* 108 F.Supp.2d 19, 29 (D.D.C. 2000) (The purpose of exemption 4 is to protect private business information that "the government requires a private party to submit…as a condition of doing business with the government.");
- o *Racal-Milgo Gov't Sys. V. SBA*, 559 F.Supp. 4, 6 (D.D.C. 1981) ("Disclosure of prices charged the Government is a cost of doing business with the Government.");
- o *EHE,* No. 81-1087, slip op. at 4 (D.D.C. Feb. 24, 1984) ("[O] who would do business with the government must expect that more [information] is more likely to become known to others than in the case of a purely private agreement.")

- <u>Is the requested information "obtained from a person?"</u>

*Argus's* position is that it has asked for government's records of government payments to those who chose to do business with the government. The EBT information obtained by the government (be it from retailer or SNAP recipient) merely initiates the payment process. The same would be accomplished if the SNAP retailer were sending government a list of the products/goods it provided to SNAP households and were paid accordingly. The best proof for the proposition is logical, critical thinking. It is the absence of case law that suggests that USDA's concept of "obtained from a person" is overly literal and misses the forest for the trees. In arguing "the information here is required to be submitted [to participate in SNAP]," USDA acknowledged the basic reason for that is "because the system of providing this information is

how the retailer gets paid." [Docket 61, p. 19]  This tautology only strengthens the *Argus's* position that its request is for the government's side of the equation, *i.e.* the payment information.

- Is disclosure of annual SNAP sales "likely" to entail "substantial competitive harm" to all the SNAP retailers whose annual payments are disclosed.

*Argus's* position is that there is inadequate proof that competitive harm is "likely" and, moreover, insufficient proof that any "likely" harm will be "substantial."  MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 10th ed. (1993) ("likely" is defined as "having a high probability of occurring or being true: very probable") ("substantial" is defined as "considerable in quantity: significantly great"); BLACK'S LAW DICTIONARY, 4th ed. (1968) ("likely" is defined as "in all probability") ("substantial" is defined as "of real worth and importance; of considerable value; valuable").

- o *Contract Freighters, Inc. v. Sec'y of U.S. Dept. of Transp.,* 260 F.3d 858, 863 (8th Cir. 2001) ("[G]eneralized allegations cannot establish that disclosure of financial reports would cause substantial competitive harm.");

- o *Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1291 (D.C. Cir. 1983) ("Conclusory and generalized allegations of substantial competitive harm, of course, are unacceptable and cannot support an agency's decision to withhold the requested documents.");

- o *In Defense of Animals v. USDA*, 501 F.Supp.2nd 1 (D.D.C. 2007) ("Under FOIA, an agency has the burden to demonstrate that withheld documents are exempt from disclosure, which it may meet by submitting 'affidavits [that] show, with reasonable specificity, why the documents fall within the exemption.  The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague and sweeping.'" [citations omitted.]);

- o *Judicial Watch, Inc. v. Dept. of Justice,* 259 F.Supp.2nd 86 (D.D.C. 2003) ("[J]ustifications for nondisclosure [must be established] with reasonably specific detail…[and] not controverted by either contrary evidence…nor by evidence of agency bad faith.");

- *Center for Public Integrity v. Dept. of Energy*, 191 F.Supp.2nd 187 (D.D.C. 2002) ("[Agencies must be] able to demonstrate that release of the information would be of substantial assistance to competitors in estimating and undercutting a bidder's future bids.");

- *GC Mircro Cor. v. Defense Logistics Agency*, 33 F.3d 1109, 1115 (9th Cir. 1994) (holding that requested information is not protected under Exemption 4 where "rather conclusory statements" were insufficient and the data "made up of too many fluctuating variables for competitors to gain any advantage from the disclosure.");

- *Pacific Architects & Eng'rs Inc. v. U.S. Dept. of State*, 906 F.2d 1345, 1347 (9th Cir. 1990) (affirming that Exemption 4 did not prevent disclosure of "aggregate figures…made up of a number of fluctuating variables" where disclosure would not reveal "the various component parts that make up" the requested data.)

- *Martin Marietta v. Dalton*, 974 F.Supp. 37, 41 (D.D.C. 1997) ("neither the revelation of cost and pricing data nor proprietary management strategies were likely to result in such egregious injury to [the submitter] as to disable it as an effective competitor for [the agency's] business in the future.")

- *Natural Res. Def. Council, Inc. v. DOI,* No. 13-942, 2014 WL 3871159 (S.D.N.Y. Aug. 5, 2014) (burden to provide "adequate documentation of the specific, credible, and likely reasons why disclosure would actually cause substantial competitive injury") (factoring in, too, the bidder's "strong incentive to [stay in business with the government.]"

- *Biles v. HHS*, 931 F.Supp.2d 211, 224 (D.D.C. 2013) (the "'harm' aspect of 'competitive harm' is an *unfair* commercial disadvantage by way of exposure.") (emphasizing that agency did not explain why giving "*all* [businesses providing data]. . . access to the requested data, . . . [which] prevent[s] any one [of those businesses] from unfairly benefiting to the detriment of another [of those businesses,] . . . still poses a likelihood of substantial competitive harm.") (finding claims regarding harm "too conclusory to satisfy [defendant's] burden of proof.") ("Crucial, and missing, in [defendant's] evidence is exactly *how* all of these

consequences of disclosure would cause a likelihood of substantial competitive harm."

- o *Trifid Corp. v. National Imagery and Mapping Agency,* 10 F.Supp.2d 1087 (1998) ("'presumptively disclosable unless it is clearly exempt'" [citing *NLRB v. Robbins Tire*]) (dismissing as inadequate arguments that "contain only generalized allegations relating to competitive harm, which do not contain 'any level of detail' [citing *McDonnell Douglas Corp. v. National Aeronautics & Space Admin.*, 981 F.Supp. 12, 18 (D.D.C. 1997)] or serve to establish the likelihood of the competitive harm they assert.") (noting insufficiency of "conclusory and generalized assertions of substantial competitive harm…to sustain the burden of nondisclosure under the FOIA.)

Finally, even if the Court were to determine that disclosure of annual totals paid to retailers under SNAP is "likely to cause substantial competitive harm" to those retailers, the Court would have to extend the reasoning for that decision to accommodate dated data in this case.  It is now 2016 and the original FOIA request was for 2005-2010 data.[2]

- o *Biles v. HHS*, 931 F.Supp.2d 211, 224 (D.D.C. 2013) (failure "to explain why 2009 data is still commercially valuable to competitors of how that data could be used in 2014 or later to create a likelihood of substantial competitive harm."
- o *Prison Legal News v. DHS*, No, 14-479, 2015 WL 3796318 (W.D. Wash. June 18, 2015) (stale information);
- o *Ctr. For Auto. Safety v. U.S. Dep't of Treasury,* No 11-1048, 2015 WL 5726348 (D.D.C. Sept. 30, 2015).

---

[2]  To be clear, *Argus* and USDA have approached this case with the expectation that the Court could and would make a ruling that would apply to both past, present and future years.  However, if the "vitality" of the information were the dispositive factor for the Court, the *Argus* would still be entitled to the benefit of this back-up argument.

- <u>When a person voluntarily transacts business with the government, should the potential competitive harm to that person from disclosure of amounts paid for the goods or services be balanced against the potential benefits to the program and/or the public under FOIA exemption 4?</u>

*Argus's* position is that in that particular context, it is reasonable for a court to balance demonstrable competitive harm against the public interest in disclosure that arguably comes under the "cost of doing business with government" doctrine.

- o *Racal-Milgo Gov't Sys. V. SBA*, 559 F.Supp. 4, 6 (D.D.C. 1981) ("Disclosure of prices charged the Government is a cost of doing business with the Government.");
- o *EHE,* No. 81-1087, slip op. at 4 (D.D.C. Feb. 24, 1984) ("[O] who would do business with the government must expect that more [information] is more likely to become known to others than in the case of a purely private agreement.")

**5. <u>Exhibit list (potential):</u>**

Macks (Kmart) declaration.pdf
LeBlanc (Raintree) declaration.pdf
Cumberland declaration.pdf
Champagne declaration.pdf
Hays (Dyer) declaration.pdf
Gresham (Double Quick) declaration.pdf
Barbier (Big B's) declaration.pdf
Buche declaration.pdf
Bourne (Ragland) declaration.pdf
FMI declaration.pdf
Zahar declaration.pdf
Perret (Club Grocery) declaration.pdf
St. Germain (Pierre Part) declaration.pdf
Snyder (Supervalu) declaration.pdf
Larkin (NGA) declaration.pdf
Int J Behav Nutr (2012).pdf
DOJ (Ohio Trafficking).pdf
DOJ (Utah Trafficking).pdf
DOJ (Florida Trafficking).pdf
DOJ (SNAP search).pdf
FNS-SNAP website.pdf
SNAP Retailer Locator.pdf
SNAP Retail Information.pdf
SNAP Retail Eligibility.pdf
SNAP Fraud Poster.pdf

SNAP Eligible Food.pdf
SNAP Retailer Info #2.pdf
SNAP 2015 Retailer Report.pdf
SNAP 2010 Retailer Report.pdf
SNAP EBT.pdf
SNAP Fed. Register.pdf
SNAP Program Data.pdf
SNAP History.pdf
SNAP Reports.pdf
SNAP for Researchers.pdf
SNAP Research grants.pdf
SNAP Household Map.pdf
USDA Strategic Plan 2014-2018.pdf
USDA Concannon.pdf
USDA Rowe.pdf
USDA ERS - 2014 Farm Act Maintains SNAP Eligibility Guidelines and Funds New Initiatives.pdf
USDA ERS Where Do Americans Shop for Food.pdf
USDA ERS - Twenty Years of Competition Reshape the U.S. Food Marketing System.pdf
USDA ERS - Supermarket Characteristics and Operating Costs in Low-Income Areas.pdf
USDA ERS - Tracking Low-Income Purchasing.pdf
USDA ERS - Access to Affordable Food.pdf
Federal Register | Enhancing Retailer Standards in the Supplemental Nutrition Assistance Program (SNAP).pdf
USDA FNS summary of 2013 RFI.pdf
USDA FNS Trafficking Report 2009-2011.pdf
2009-2011 Trafficking Report Summary.pdf
Trafficking report press release.pdf
USDA press release - 2013 fraud prevention.pdf
Open Government at USDA | USDA.pdf
USDA Seeks Public Input to Increase Transparency of SNAP Retailer Data | Food and Nutrition Service.pdf
DOJ Guide to FOIA (AG memorandum).pdf
Obama FOIA Memorandum.pdf
AG's FOIA memorandum.pdf
Congressional testimony (Concannon, 4-10).pdf
Congressional Testimony (Pardis, 7-10).pdf
RFI comment spreadsheet.pdf
BusinessesForSale.com US - Sell or Buy a Business for Sale.pdf
Infosys - Business Technology Consulting | IT Services | Enterprise Solutions.pdf
NPR - Marketplace report "The secret life of a food stamp".pdf
First Research Industry.pdf
Grocery Stores & Supermarkets Industry Profile from First Research.pdf
Center for Rural Affairs - Rural Grocery Stores (models).pdf
Strategy& - the global strategy consulting team at PwC.pdf
Supermarkets and Retailers Turn Blind Eye to Food Stamp Funding Cuts - The Daily Beast.pdf

National Retail Federation | Home.pdf
Consumer Data | National Retail Federation.pdf
Targeted Sales Leads - Retail & Restaurant Leads | Chain Store Guide.pdf
U.S. Convenience Store Count | NACS Online – Research – Fact Sheets – Scope of the Industry.pdf
Food Research Action Center "Strategies to Bolster SNAP".pdf
Stagnito Business information + Edgell Communications/ A BtoB Media/information Company Focused on the Retail Sector.pdf
Food-us.org.pdf
Influence Analytics/ Grocers want to keep food stamp data secret - Sunlight Foundation Blog.pdf
About Us | What Consumers Watch and Buy | Nielsen.pdf
Expert Column/ The 'SNAP' Effect Has Changed the Way Americans Shop | ProgressiveGrocer.pdf
The Problem with Food Stamps | CSP Daily News.pdf
Resources – Cortera.pdf
Cortera B2B Insight Reports with SOFIE™ – Cortera.pdf
Lucky's Supermarket-Ragland Brothers.pdf
Ragland Bros Retail Cos Huntsville AL, 35811 – Manta.com.pdf
Businesses in the United States // WhereOrg.pdf
Kmart State Store Directory/ Find a Nearby Kmart Store.pdf
Walmart.com/ Save money. Live better..pdf
FMI | Food Marketing Institute | Food Marketing Institute.pdf
FMI | Food Marketing Institute | FMI Research Resources.pdf
FMI | Food Marketing Institute | Supermarket Facts.pdf
FMI | Food Marketing Institute | FMI Government and Public Affairs.pdf
FMI 12/2/14 conference call.pdf
FMI 12/16/14 conference call.pdf
FMI September 9, 2014 .pdf
EBT Card Balance - Check Food Stamp Balance.pdf
House Agriculture Committee Questions USDA Over Proposed SNAP Rule | NACS Online – Media – News Archive.pdf
Bengford 5-3-14 e-mail.pdf
Bengford 6-16-14 e-mail.pdf
Arneson 5-13-15 letter to USDA declarants.pdf
Arneson 6-10-15 follow-up letter to declarants.pdf
Barbier (Big B's) declaration explanation.pdf
Hays (Food Rite) declaration explanation.pdf
Bourne (Ragland Brothers) declaration explanation.pdf
Buche declaration explanation.pdf
Larkin (NGA) declaration explanation.pdf
Schwartz (Interfaith) RFI declaration.pdf
Levy (NYC Coalition Against Hunger) RFI declaration.pdf
Clark (UFCW) RFI declaration.pdf
Wilde (Friedman School of Nutrition Science and Policy) RFI declaration.pdf
Stark (A'ssn Health Care Jounalists) RFI declaration.pdf
Weatherly denial letter (received 2-17-11).pdf

DOJ 9-21-11 letter regarding FOIA request.pdf
Vilsack 9-24-13 letter to Ass'n Health Care Journalists.pdf
Weatherly declaration [13-1] regarding cost of Exemption 4 notice.pdf
Modine declaration [20] regarding SNAP records .pdf
Gold declaration [21] regarding SNAP administration.pdf
USDA continuance motion [48] retailer notice issue.pdf
USDA memorandum [49] citing retailer notice law.pdf
Executive Order 12600.pdf
7 C.F.R. §1.12.pdf
USDA script(s) for e-mail and telephone notice to retailers.pdf
USDA continuance motion [54] after RFI.pdf
Gold declaration [54-1] on need for RFI follow-up.pdf
Federal Register RFI (8-4-14).pdf
USDA RFI press release (8-4-14).pdf .pdf
USDA request for declarations (12-1-14).pdf
USDA template for declarations.pdf
Gold declaration [59] on RFI and declaration processes (1-20-15).pdf
Gold declaration [78] defending processes(6-1-15) .pdf
USDA-redacted internal SNAP memo of decision not to release data (1-20-15).pdf
USDA objection to producing "final data summary report of RFI".pdf
RFI comment search results for "competition".pdf
RFI comment search results for "compete".pdf
RFI comment search results for "competitive".pdf
RFI comment search results for "competitive harm".pdf
RFI comment search results for "substantial competitive harm".pdf
RFI comment spreadsheet (alphabetized).pdf
USDA Declarant Spreadsheet.pdf

**6. Suggestions for expediting the disposition of the action**.

   Stipulating to the bulk of the facts would save considerable time and cut down on the number of exhibits needed.

**7. An estimate of the length of total trial time.**

   *Argus* believes three days is more than adequate time to complete this court trial.

DATED this 11th day of May, 2016.

                                        /s/ Jon E. Arneson
                                        JON E. ARNESON
                                        123 South Main Avenue, Ste. 202
                                        Sioux Falls, South Dakota 57104
                                        Telephone:  (605) 335-0083
                                        Attorney for Plaintiff