UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ARGUS LEADER MEDIA, dba *ARGUS LEADER*,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendant. | File 4:11-cv-04121-KES<br><br><br>DEFENDANT'S POST-TRIAL REPLY BRIEF |

Defendant, by and through its attorneys, United States Attorney Randolph J. Seiler and Assistant United States Attorney Stephanie C. Bengford, hereby submits its post-trial reply brief. As previously indicated, the issue remaining before the court is whether or not the information requested, individual SNAP retailer redemption information for the years 2005 to 2010, meets the elements of Exemption 4, 5 U.S.C. § 552(b)(4), under the Freedom of Information Act, 5 U.S.C. § 552. Plaintiff's FOIA request seeks, "Please send me the following data from the FNS STARS database for fiscal years 2005 through 2010: . . . The yearly redemption amounts, or EBT sales figures, for each store." Doc. 1-1. The United States Department of Agriculture (USDA) through Food and Nutrition Service (FNS), an agency of USDA, has declined to disclose this information.

1 – Defendant's Post-Trial Reply Brief

## I.   DISCUSSION

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). For the information to be protected under Exemption 4, defendant must show that (1) the information requested is (a) commercial or (b) financial; (2) it is obtained from a person; and (3) it is privileged or confidential. *Id.* That the information is commercial or financial has been acknowledged by the parties in their pretrial stipulation. ECF 99.

### A. Requested Information is Obtained from a Person under Exemption 4.

It is the second element, that the information was "obtained from a person," that the parties agreed to brief for the court. Closing Arguments 51:15-19. The retailers that provide this information are "persons" within Exemption 4. *Brockway v. Dept. of Air Force,* 518 F.2d 1184, 1188 (8th Cir. 1975) ("Person" within Exemption 4 includes "'an individual, partnership, association, or public or private organization other than an agency.'") (quoting 5 U.S.C. § 551(2)); *FCC v. AT&T Inc.,* 562 U.S. 397, 131 S. Ct. 1177, 1185 (2011) (Exemption 4 includes corporations). As set forth in USDA's original brief, the redemption information the *Argus Leader* has requested originates with the retailer. USDA's Post-Trial Memorandum at 6. USDA has demonstrated that the retailer "was the source of the information in the first instance." *Compare In Defense of Animals v. NIH,* 543 F. Supp. 2d 83, 102-03 (D.D.C. 2008) (the incentive award payments were not "obtained from a person"

because agency did not establish that "the contractor was the source of information in the first instance"). Therefore, the obtained from a person element has been established.[1]

Plaintiff's overarching theme is that because the information requested involves a government program that Exemption 4 cannot apply. This argument misses the point in at least two ways. First, the determination of whether Exemption 4 applies is based upon whether the long-standing elements of Exemption 4 are met. To state, as plaintiff does, that because a government program is involved that exemption 4 cannot apply ignores the protections, the exemptions, that Congress put in place when enacting FOIA.

Second, Plaintiff's argument is a public policy argument which is not an element under Exemption 4. Plaintiff argues the information it wants is how much is being spent in taxpayer dollars as to the SNAP program and that it is entitled to such information. However, just the amount that is spent in tax payer dollars as to SNAP is not the information that plaintiff really wants. That information is already available. USDA's website already provides information as to how much is spent on SNAP dollars. Instead, plaintiff seeks information on how much individual stores earn in SNAP redemptions. Redemption information is not secret; it is released and broken down by national, regional, state, county, zip code, and store type level. Gold 42: 19-21. Plaintiff is asking for redemption data by individual store which reveals how much each retailer

---

[1] As this Court is aware, the prior Eighth Circuit decision which the plaintiff cites to was a decision based upon Exemption 3. Exemption 4 was not an issue in that case.

earned in SNAP broken down by individual store. Testimony established that a single retailer participating in SNAP may have multiple individual stores. However, SNAP retailers are not necessarily paid at the individual store level (Pierce 15: 15-16) and the STARS database that uses redemption data is not maintained to make payments to individual retailers. Pierce 11:16-18. Testimony repeatedly revealed this type of sales information is not releasable under FOIA based on the concern that this type of sales information is likely to result in competitive harm to the submitting retailer.

To ignore this important distinction, that the Argus seeks specific retailer store information, ignores the specific reasons as to why Congress enacted Exemption 4. To argue that because money is involved that the taxpayers have a right to know is a public policy argument, and public policy implications do not come into pay within Exemption 4. *See Public Citizen Health Research Group v. Food & Drug Admin.,* 185 F.3d 898, 904 (D.C. Cir. 1999) (court rejected that the *National Parks* test contains a public policy element); *Lahr v. NTSB,* 453 F. Supp. 2d 1153, 1176 (C.D. Cal. 2006) (only test that applies is the *National Parks* test and public policy balancing test not required under Exemption 4), aff'd in part and reversed in part, *Lahr v. Nat'l Transp. Safety Bd.,* 569 F.3d 964 (9th Cir. 2009) (Exemption 4 not an issue on appeal). "[T]he Congress has already determined the relevant public interest: if through disclosure 'the public would learn something directly about the workings of the Government,' then the information should be disclosed unless it comes within a specific exemption." *Public Citizen,* 185 F.3d at 904 (quoting *Nat'l Ass'n of*

*Retired Fed. Employees v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989).  The District of Columbia Circuit rejected that the *National Parks* test had a public policy element stating, in part:

> It is not open to Public Citizen, however, to bolster the case for disclosure by claiming an additional public benefit in that, if the information is disclosed, then other drug companies will not conduct risky clinical trials of the drugs that Schering has abandoned.  That is not related to "what the [ ] government is up to" and the Court has clearly stated that "whether disclosure of a . . . document . . . is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny . . . rather than on the particular purpose for which the document is being requested." [*DOJ v. Reporters Comm. For Freedom of Press,* 489 U.S. 749,] . . . 772, 109 S. Ct. 1468.  In other words, the public interest side of the balance is not a function of the identity of the requester, *see id.* at 771, 109 S. Ct. 1468, or of any potential negative consequences disclosure may have for the public, *Washington Post Co. v. HHS,* 865 F.2d 320, 327-28 (D. C. Cir. 1989), nor likewise of any collateral benefits of disclosure.

*Public Citizen,* 185 F.3d at 904.  Therefore, as to Exemption 4, any public policy argument that the requested information is taxpayer dollars which therefore must be released is irrelevant because the amount of taxpayer dollars spent on SNAP is already available and public policy is not a relevant factor when looking at Exemption 4.[2]

---

[2] Cases involving actual government payments, for example, Medicare payments to doctors and farm subsidy payments, are distinguishable. For example, a court decision to release the names, addresses, and the annual amounts paid to individuals receiving cotton price support program payments, was based on Exemption 6 of FOIA, not Exemption 4. *Washington Post v. USDA*, 943 F.Supp. 31 (D.D.C. 1996). In the case of annual amounts of reimbursements paid to individual Medicare providers, a court found that such information was not protected under Exemption 4 as it did not meet Exemption 4's "confidential" prong. *Florida Medical Ass'n v. Dep't of Health, Educ. & Welfare*, 479 F.Supp. 1291, 1302-3 (1979), vacated by, *Florida Medical Ass'n, Inc. v. Dep't of Health, Educ. & Welfare,* 947 F. Supp. 2d 1325 (M.D. Fla. 2013). Specifically, the court

Here, FNS is summarizing the daily redemption information it receives which is supplied by a source outside the government, either the retailer, TPP, or state-contracted, private EBT-processor, into reports generated within the STARS database. *See* USDA Post-Trial Memorandum at 6-8 (citing cases for proposition that government is permitted to summarize information and that information still originates from a person within Exemption 4).  Just like the court held in *Judicial Watch*, these retailers or entities all satisfy the definition of obtained from a person within Exemption 4. *Compare, Judicial Watch, Inc. v. Export-Import Bank,* 108 F. Supp. 2d 19, 28 (D.C.C. 2000).

In addition, the scope of Exemption 4 is "sufficiently broad to encompass financial and commercial information concerning a third party" and Exemption 4 protection is provided whether the commercial interest belongs to the party that provided the information or a third-party. *Bd. of Trade of City of Chicago v. Commodity Futures Trading* Comm'n, 627 F.2d 392, 405 (D.C. Cir. 1980), *abrogated on other grounds by, United States Dep't of State v. Washington Post Co.,* 456 U.S. 595 (1982). Accordingly, the fact that the retailer provides the information to a third-party before providing it to FNS does not impact the

---

found that release of Medicare payments to doctors is unlikely to impair the government's ability to obtain this information in the future because the government needs such information to reimburse Medicare providers. Unlike Medicare payment information, FNS does not use SNAP redemption information to pay retailers. (Pierce Tr. 11:16-18). Additionally, the court summarily found that the disclosure of such information would not cause substantial competitive harm to the positions of Medicare providers. However, a finding of substantial competitive harm is a fact-specific inquiry, and the government has presented its evidence demonstrating substantial competitive harm to retailers in the course of this trial.

application of Exemption 4.³  When applying the law to the facts, the USDA has established that the information was obtained from a person.

### B.   Requested Information is Confidential under Exemption 4

The third element of Exemption 4 requires that the information requested is confidential. *Brockway*, 518 F.2d at 1188 (citation omitted). The parties elected not to brief this issue post-trial; however, plaintiff briefed the issue so USDA will briefly reply.

Eighth Circuit case law defines confidential under Exemption 4 as follows:

> Commercial or financial matter is confidential when "disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."

*Contract Freighters, Inc. v. Sec'y of U.S. Dep't of Transp.,* 260 F.3d 858, 861 (8th Cir. 2001).  This test is known as the *Nat'l Parks* test and has been widely applied when analyzing Exemption 4.  *Id.; see also Nat'l Parks & Conservation*

---

³ Plaintiff attempts to argue that it could request the amounts that participants spend in SNAP and the information disclosed would be the same and that would not change the analysis.  That is not the case.  If one was asking for what a participant spends, the information would be broken down differently, and some participant information would be available in ALERT but not STARS.  *See* Pierce 12:6-13.  ALERT is also not used for the purposes of paying SNAP retailers.  *Id.* 12: 17-19.  A requester would not be obtaining how much is spent at an individual retail store within a year, but presumably, depending on the request would be asking for what a participant spends on SNAP within an applicable time frame.  Because the analysis of such a request is irrelevant to the issues before the Court, USDA does not discuss at this time what FOIA exemptions would or would not be applicable.

*Ass'n v. Morton,* 498 F.2d 765, 770 (D.C. Cir. 1974).[4]  Subsection 2 above is the definition of confidential which is at issue in this case.  Plaintiff criticizes USDA for not defining substantial competitive harm, but the aforementioned case law defines substantial competitive harm.  The issue for the Court is whether the facts presented meet the legal definition of substantial competitive harm, and the retailer testimony in this case demonstrates that the retailers are likely to incur substantial competitive harm.

USDA is only required to show substantial competitive harm is likely. *Madel v. U.S. Dept. of Justice,* 784 F.3d 448, 453 (8th Cir. 2015); *see also Boeing Co. v. United States Dep't of the Air Force,* No. 05-365, 2009 WL 1373813, at *4 (D.D.C. May 18, 2009) (agency is "not required to prove that substantial harm is 'certain' to result from disclosure, but only that such harm is 'likely'"); *Judicial Watch v. United States Dep't of Commerce,* 337 F. Supp. 2d 146, 169 (D.D.C. 2004) ("concrete evidence of specific harm" not required; only required to show that substantial harm is likely).  To show that harm is likely, more than a generalized allegation is required.  Doc. 80 (*quoting Contract Freighters,* 260 F.3d at 863).

---

[4] This Court has already held that the information provided by retailers is not provided on a voluntary basis and that the applicable test as to what is confidential is the test set forth in *National Parks.* Doc. 80 at 8, fn. 3 (D.S.D. Sept. 30, 2015).  The modified *National Park* test adopted in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 879 (D.C. Cir. 1992), applies when the information is voluntarily provided.  *Contract Freighters,* 260 F.3d at 862; *Madel,* 784 F.3d at 452.

The testimony of the retailers and USDA's experts establishes that substantial competitive harm is likely with more than generalized allegations.[5] All the retailers testified they consider this information confidential, and that point is reinforced by the testimony that sales information as to specific retail stores is not information available in the market place, and information as to what a specific store sells in SNAP is also information not available within the market.  Testimony revealed how this information would be beneficial to those with certain market strategies.  The information would benefit market entrants at the expense of market incumbents, whose historic sales information would inform an entrant's business decisions regarding store location, advertising, and targeting the incumbent's current customer base.  Experts and retailers testified that the released information could be used by parties to predictably enhance a retailer's market position at the expense of their competition.  Testimony presented that even if a retailer would use this information it would rather not have this information available given the potential competitive damage.  The testimony presented set forth that not only can this information be used to gain market share to the disadvantage of others competing, but this information could be exploited by those outside of the food retail industry.  One example is that Kmart was concerned that if SNAP information was available, this could result in its leases not being renegotiated because the landowner

---

[5] USDA did not order the trial transcript of the retailers and the experts as this issue was not to be briefed.  Accordingly, USDA's reply as to the evidence that shows that substantial competitive harm is likely is not intended to be all inclusive as to all the evidence presented nor is it able to cite to specific testimony.

does not want the perception that its property caters to SNAP participants. If a lease is not renewed, a retailer must decide whether it is costlier to commit additional investment in real estate or to cede its customer base to competition. These are just some of the examples, which are more than generalized allegations by the retailers, as to why release of financial information would likely cause competitive harm.

There is no requirement that all the parties come forth. Nor can any conclusion be drawn as to why the retailers that didn't come forth did not do so. Once a court starts analyzing how many retailers came forth, it is participating in a balance test to prohibit disclosure. As set forth above, such a balancing is not appropriate under Exemption 4. In addition, this information is not stale. *Center For Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 16 (D.D.C. 2000) ("Information does not become stale merely because it is old."); *Burke Energy Corp. v. Department of Energy for U.S.A.*, 583 F. Supp. 507, 514 (D. Kan. 1984) )(information that was nine years old at the time of the decision was not stale). Retailers testified at trial how the information from 2005 to 2010 could be used and the Argus has made a request for additional information (Gold 103:1-4).

Courts have held on more than one occasion under Exemption 4 that financial information is protected. In *National Parks,* the court denied release of financial information based upon Exemption 4. *Compare Nat'l Parks,* 547 F.2d at 684. (financial information to be disclosed would result in "five concessioners fac[ing] competition in light of the extremely detailed and

10 – Defendant's Post-Trial Reply Brief

comprehensive nature of the financial records requested . . ., [and the court] considere[d] the likelihood of substantial harm to their competitive positions to be virtually axiomatic"). In *Sharkey v. Food & Drug Admin.,* the FDA opposed release of quantity of vaccines manufactures of the hepatitis B vaccine distributed. *Sharkey v. Food & Drug Admin.,* 250 Fed. Appx. 284, 288, 2007 WL 2914212 (11th Cir. 2007). The FDA maintained that "release of the requested records will make public two categories of otherwise non-public information." *Id.* The FDA urged in part that release of "net doses distributed per lot" woul2d disclose "the manufactures' domestic markets shares and sales volume." *Id.* Pursuant to Exemption 4, the Eleventh Circuit found substantial competitive harm. *Id.* at 289. The court found that "the net number of doses distributed per lot will, at a minimum, reveal the manufacturers' market shares and sale volume for the hepatitis B vaccine." *Id.* The appellate court stopped after considering the first issue and found it did not need to consider the second issue to determine that Exemption 4 applied. *Id.* Here, just as concerning is the harmful impact to competition that release could have on a retailers' market share and indication of actual sales for an individual store. *See Pub. Citizen Health Research Group,* 209 F. Supp. 2d 37, 48-49 ("information that competitors could use to derive a firm's profit margin constitutes serious competitive harm"). The information being disclosed is not available anywhere in the market, and if redemption information is provided the retailer and expert testimony, including the testimony under seal, specifically explains the actual harm that could occur in part because the

information could be used to the competitive advantage of other retailers. *Compare Pub. Citizen,* 209 F. Supp. 2d at 47 (information that could lead to a "competitor being able to make a <u>rough</u> calculation of a firm's profit margin on a particular drug" was enough to find substantial competitive harm under Exemption 4) (emphasis added).

## II.   CONCLUSION

USDA submits that the trial testimony in this matter establishes that the information requested was obtained from a person and is confidential. Accordingly, the elements of Exemption 4 are met and the redemption information requested should be barred from release as to all retailers.

Date:  July 25, 2016.

RANDOLPH J. SEILER
United States Attorney

/s/ Stephanie C. Bengford
_____
STEPHANIE C. BENGFORD
Assistant U.S. Attorney
PO Box 2638
Sioux Falls, SD 57101-2638
Phone:  605.357.2341
Fax:  605.330.4402
Stephanie.Bengford@usdoj.gov