# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH DAKOTA

# SOUTHERN DIVISION

ARGUS LEADER MEDIA, DBA *ARGUS LEADER*,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE

Defendant.

Case No.:  11-4121

**PLAINTIFF'S CLARIFICATION OF DEFENDANT'S POST-TRIAL REPLY BRIEF**

Plaintiff, Argus, through its attorney, Jon E. Arneson, submits this short response to the post-trial reply brief filed by Defendant, USDA, for the purpose of clarification.  When the Court proposed its *ad hoc* post-trial briefing schedule to accommodate USDA's request, it was not contemplated that Argus would have reason to respond to USDA's reply brief.  However, in order to minimize the chances of incorrect inferences being drawn from USDA's work, it is necessary for Argus to address two matters.  Argus is not attempting to submit new argument or authority.

## "Redemption"

USDA has always chosen to describe this case as one about SNAP retailer redemption information instead of government's SNAP payment information.  That labeling serves the agency's purpose of having the Argus's FOIA request appear to be more of an unwarranted invasion of the private sector than a legitimate inquiry of the public sector.

This game of semantic tag is perpetuated by USDA's reference to Argus's original February 1, 2011, FOIA request that was phrased in USDA jargon.[1] (Docket 125, p. 1)  USDA manages to ignore Argus's February 25, 2011, appeal letter, the in which Argus stressed that "the request asked for the amounts that each business received from taxpayers during the calendar years 2005-2010 by participating in the SNAP program." (Docket 1-3).

In the final analysis it is a distinction without a difference.  SNAP, stripped to its core, is just the federal government paying grocery stores for the food of low-income households.  To account for our tax dollars, the federal government has to maintain records—or be able to readily produce them—of where our money goes.  That would include the annual amounts the federal government has paid out to the retailers participating in SNAP on behalf of the low-income households.  And those payments are the data that the Argus wants.

If it walks like a duck, quacks like a duck, and swims like a duck, it very probably is a duck—even if USDA chooses to call it something else.

### "Confidential" information

The Argus touched upon the "confidential" issue in its answering brief only to dispute USDA's assertion that it had adequately proven the "substantial competitive harm" component and to question Mr. Gaston's declaration of expertise in his closing argument.[2]  Argus's limited discussion was not a comprehensive autopsy of USDA's case.  That is not to say that Argus

---

[1] Argus has continually challenged the agency's reference to a type of redemption that doesn't even exist.  In the first place, there is no redemption by SNAP retailers of anything.  If redemption applies at all, it is to the SNAP households' benefits. (Gold T.Tr. 49:5-50:6)  In the second place, Argus's objective has never been a mystery to USDA.  (Pierce T.Tr. 15:20-16:22)

[2] Argus's counsel did not actually hear Mr. Gaston's comments during his argument, but noticed it in the course of reviewing a transcript of the closing arguments.

2

objects to USDA replying in some manner.  What Argus does object to is USDA lifting a finding from a newly cited case and tendering it as some sort of precedent for *Argus v. USDA,* without bothering to acknowledge the significant difference in the factual basis, which undermines the case's relevance.  To reiterate, Argus is not trying to engage USDA in protracted argument at this point, but is compelled to point out a couple of examples of "misplaced reliance."

In arguing that the requested information is not "stale," for instance, USDA interposes findings from *Center for Auto Safety v. Nat'l Highway Traffic Safety Admin.,* 93 F.Supp.2d 1 (D.D.C. 2000) and *Burke Energy Corp. v. Dept. of Energy for U.S.A.,* 583 F.Supp.507 (D.Kan. 1984) in support of its position. (Docket 125, p.10)  The problem is that in neither of these cases does USDA bother to relate the very limited context in which "staleness" was considered.

USDA's use of *Auto Safety, supra,* is misleading for the simple reason that "substantial competitive harm" was not even in issue in the case.  As a result, "staleness" was simply a question of whether the information would continue to qualify as "commercial."  "Staleness" was not a matter of prospective use of competitors or likely effect of that use, as it would be in *Argus v. USDA*.  Simply put, the *Auto Safety* statement that "[i]nformation does not become stale merely because it is old" does preclude old information from being "stale" in many instances.

USDA's reliance on *Burke Energy, supra,* is even more perplexing.  The nine-year old documents found not to be "stale" in *Burke Energy* contained a wide variety of information, ranging from pricing to investments to operating costs to profits to customer names.  Moreover, the critical finding in *Burke Energy,* which USDA conveniently ignored, was that the "[d]ocuments are of relatively recent vintage with respect to the likely competitive harm to Inexco that would result upon their disclosure."   That same statement cannot be made with respect to the dated SNAP payment informaton in *Argus v. USDA*.  In short, *Burke Energy* establishes only that there are scenarios in which 9-year old information is not "stale."

3

The second concern is USDA's insinuating a standard for "substantial competitive harm," by citing *Sharkey v. Food & Drug Administration*, 250 Fed. Appx. 284, 2007 WL 2914212 (11th Cir. 2007). (Docket 125, p. 11)  To the best of Argus's recollection, this is USDA's first mention of *Sharkey,* an "unpublished opinion" [3]

Based on its presentation, USDA appears to be promoting *Sharkey* as precedent that "substantial competitive harm" necessarily flows from "disclosure of market share and sales volume."  Quoting from the Eleventh Circuit's decision, USDA's counsel wrote:

> The FDA urged in part that release of "net doses distributed per lot [of hepatitis B vaccine] would disclose "the manufacturers' domestic market shares and sales volume." Pursuant to Exemption 4, the Eleventh Circuit found substantial competitive harm.  The court found that "the net number of doses distributed per lot will, at a minimum, reveal the manufacturers' market shares and sales volume for the hepatitis B vaccine."

However, for some inexplicable reason USDA abruptly stopped short of the actual holding in the case, leaving a legal conclusion that is, at best, ambiguous and, quite possibly, misleading.[4]

Right after the point at which USDA seemed to stop reading, the Eleventh Circuit wrote:

> Therefore, we find that the Defendants have demonstrated that disclosure of the withheld information will reveal their market shares and sales volume of the hepatitis B vaccine in the United States.  *Our inquiry does not end here, however.*  Having determined that disclosure of the net number of doses per lot of each manufacturer's hepatitis B vaccine will reveal market share and sales volume, *we now must decide whether the district court correctly found that Merck's and Glaxo's competitors knowledge of this information would likely result in substantial competitive harm to the manufacturers.* [Emphasis added.]

---

[3] USDA wrote two briefs in support of its second summary judgment motion and filed pretrial submissions that were to include "authority counsel intends to rely on at trial."  At each stage, "substantial competitive harm" was a prominent topic.

[4] Argus was familiar with *Sharkey, supra.*  The case is factually distinguishable from *Argus v. USDA* in significant—and obvious—respects and, therefore, inapposite.  Had USDA brought the case up earlier, Argus would have had the opportunity address it.

Whatever its limited value as an unpublished opinion, *Sharkey,* most assuredly, does not stand for a generalized proposition that disclosure of some sales and/or market share data is anything more than a point of departure.  Proving "substantial competitive harm" and its likelihood requires considerably more.

### Conclusion

Argus offers its apology to the Court for pushing beyond the intended post-trial briefing schedule.  It is not Argus's intention to abuse or take unfair advantage of any legal process.  However, Argus sincerely believes it is critically important to have case law reflected fairly and accurately.

DATED this 28th day of July, 2016.

/s/ Jon E. Arneson
JON E. ARNESON, SD. Bar #45
123 South Main Avenue, Ste. 202
Sioux Falls, South Dakota 57104
Telephone:  (605) 335-0083
Attorney for Plaintiff