UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ARGUS LEADER MEDIA, d/b/a Argus Leader, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, <br><br> Defendant. | 4:11-CV-04121-KES <br><br><br> ORDER GRANTING MOTION FOR ATTORNEY FEES AND COSTS |

Plaintiff, Argus Leader Media, moves for attorney fees and costs after prevailing on its claim under the Freedom of Information Act (FOIA). Defendant, United States Department of Agriculture (USDA), opposes the motion. For the reasons stated below, the court grants Argus's motion.

## BACKGROUND

On August 26, 2011, Argus filed a complaint seeking information from the United States Department of Agriculture about the Supplemental Nutrition Assistance Program (SNAP), formerly known as the Food Stamp Program. Docket 1. Argus sought information under the Freedom of Information Act about SNAP redemptions at the individual store level. *Id.* The USDA opposed the request and filed a motion for summary judgment, arguing that the requested information fell within FOIA Exemption 3. Docket 18; Docket 23. The court granted USDA's motion, and the Eighth Circuit Court of Appeals later reversed and remanded the case. Docket 38; Docket 45. USDA then filed a

second motion for summary judgment, arguing FOIA Exemptions 4 and 6 applied. Docket 58; Docket 61. The court denied the motion and held a bench trial on May 24, 2016. Docket 80; Docket 111. On November 30, 2016, the court entered its judgment in favor of Argus. Docket 128. Argus now seeks to recover reasonable attorney fees and costs. Docket 129.

## LEGAL STANDARD

FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). One way a complainant may substantially prevail is by obtaining relief through a judicial order. 5 U.S.C. § 552(a)(4)(E)(ii). Because an award of attorney fees is not mandatory under FOIA, the court engages in a two part inquiry: (1) whether the complainant is eligible for fees under the statute and (2) whether the complainant is entitled to fees under the statute. *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985); *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

## DISCUSSION

**I.    Eligibility for Attorney Fees**

To be eligible for attorney fees, Argus must have substantially prevailed before this court. 5 U.S.C. § 552(a)(4)(E)(i). This includes obtaining relief through a judicial order. 5 U.S.C. § 552(a)(4)(E)(ii). Here, when Argus filed its complaint with the court, Argus sought SNAP redemption data from individual stores for the years 2005 to 2010. Docket 1 at 2. On November 30, 2016, the

court entered judgment in Argus's favor and ruled that Argus was entitled to the requested information. Docket 127; Docket 128. Although Argus may have initially requested additional information, such as store identifier numbers, both parties later agreed that information had marginal relevance. The heart of Argus's request was the individual store redemption data, and this court has ruled that Argus is entitled to receive that data. Thus, Argus has substantially prevailed.

## II.     Entitlement to Attorney Fees

When determining whether a party is entitled to attorney fees, courts consider a number of factors including: "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which he seeks; and (4) whether the government's withholding of the records had a reasonable basis in law." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985) (citing *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 483 (D.C. Cir. 1980)). Each factor is addressed below.

### A.     Public Benefit

The Eighth Circuit Court of Appeals has stated, "Probably the most important consideration in determining entitlement to fees in a FOIA case is the benefit to the public which is to be derived from release of the information sought." *Miller*, 779 F.2d at 1389. The Eighth Circuit has noted that "[m]edia requesters have an obvious claim to acting in the public interest . . . ." *Id.* In *Miller*, the Eighth Circuit explained that disclosure of information related to the

attack on the U.S.S. Liberty provided "considerable public value" even though the incident happened eighteen years earlier. *Id.* at 1389-90. The information was important because there was "considerable public value in any disclosure which adds significantly to the fund of information which citizens may use in making political choices . . . ." *Id.* at 1390.

Here, USDA argues there is limited public benefit in publishing additional SNAP data because the government already publishes SNAP data on the national, regional, state, and community level. Docket 169 at 6-7. This argument, however, overlooks the public benefit the sales data could provide in improving public policy regarding city planning, distribution of government resources, and government transparency. Docket 73-6 at 5-10, ¶¶ 29-42. Because the disclosure of the requested SNAP data could add "significantly to the fund of information which citizens may use in making political choices," this factor weighs in Argus's favor.

### B. Commercial Benefit

The Eighth Circuit Court of Appeals has described this second factor as an inverse of the first. *Miller*, 779 F.2d at 1390. "To the extent that the requester seeks government information primarily for private gain, his FOIA action is a matter of his own concern and expense and not of advocacy to serve a public interest." *Id.* The Eighth Circuit has also explained that "[i]t was not the purpose of Congress to subsidize essentially private disputes with the government." *Id.* (citing *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1368 (D.C. Cir. 1977)).

Although Argus may derive some commercial benefit from publishing SNAP sales data, the primary purpose of publishing such data is to inform the public how and where government resources are being used. Argus is not using its FOIA request to further a private interest in a dispute with the government. Instead, Argus submitted its FOIA request to obtain information to share with the public. This factor also weighs in Argus's favor.

### C. Interest in the Records

Another criterion that the Eighth Circuit Court of Appeals has used in its FOIA attorney fee analysis is "the nature of the complainant's interest in the records." *Miller*, 779 F.2d at 1390. The Eighth Circuit has explained that "[w]hen the FOIA requester acts on behalf of an articulated public interest, or when he seeks information for disinterested scholarly purposes, he is more likely to be furthering the purposes of FOIA than when his primary interest is to advance a purely personal goal." *Id.* (citing *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978); *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977)). As stated above, Argus did not seek SNAP redemption data to serve a purely personal goal. Argus did not seek the information to further its own ends in a dispute with the government. Argus is more closely situated with the "disinterested scholarly purposes" articulated in *Miller*. Argus is attempting to publish information for the public, not further its private interests. This factor also weighs in Argus's favor.

### D. Reasonableness of Agency's Withholding

Both parties agree this factor weighs in favor of USDA. Docket 175 at 13; Docket 169 at 8-10. Neither party disputes that USDA had a "reasonable basis in law" to withhold the documents. *Miller*, 779 F.2d at 1390. FOIA Exemptions 3 and 4 provided a reasonable legal basis to withhold the requested information. This factor weighs in USDA's favor. Despite this fact, under the circumstances of this case and after considering all four factors, the court finds that Argus is entitled to an award of attorney fees and costs.

## III. Reasonableness of Fees Requested

Argus bears the burden of proving that its attorney fees are reasonable. *See Ginter v. IRS*, 648 F.2d 469, 471 (8th Cir. 1981) (holding "plaintiff carries the burden of sustaining the request for attorney's fees" (citing *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980))). The Supreme Court of the United States has made it clear that the lodestar method is the preferred method for calculating reasonable attorney's fees under federal fee-shifting statutes. *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 556 (1986) (using lodestar method to calculate attorney's fees under § 304(d) of the Clean Air Act); *City of Burlington v. Dague*, 505 U.S. 557, 557 (1992) (using lodestar method to calculate reasonable attorney's fees under the Clean Water Act and the Resource Conservation and Recovery Act). Where Congress has authorized an award of attorney's fees to a prevailing party, the court should "determine 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' "*Simpson v. Merchs. & Planters Bank*,

6

441 F.3d 572, 580 (8th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This formula results in what is called the "lodestar," which the court presumes is a reasonable fee. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988).

When setting the reasonable number of hours and reasonable hourly rate, the court should consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 n.3 (1983). After determining the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434.

### A. Reasonable Hourly Rate

The first phase of the lodestar analysis requires the court to determine the reasonable hourly rate for the attorney's services. *Hensley*, 461 U.S. at 433. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). The fee applicant has the burden to show that the

requested rate is reasonable and consistent with rates within the community "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Evidence of an attorney's customary rate is relevant to determining a reasonable fee. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002).

Here, Argus's attorney, Jon Arneson, requests an hourly rate of $200 per hour. Docket 163 at 6. Arneson has forty years of experience "advising media clients on state and local government access matters . . . ." *Id.* at 2, ¶ 7. Even though Arneson does not usually bill his clients by the hour (*Id.* at 2-3), this fee is reasonable given Arneson's experience. This court has previously held that a reasonable rate within the District of South Dakota is $175-$210 depending on the experience of the attorney. *See Bishop v. Pennington Cty.*, Civ. No. 06-506-KES, 2009 WL 1364887, at *5 (D.S.D. May 14, 2009) (finding that $180 was a reasonable rate for experienced partners); *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *24 (D.S.D. Mar. 12, 2010) (finding $210 was a reasonable rate for an attorney with substantial experience); *Jadari v. Shiba Investments, Inc.*, Civ. Nos. 06-5012-RHB, 06-5020-RHB, 06-5037-RHB, 06-5050-RHB, 2008 WL 5100812, at *8-*11 (D.S.D. Dec. 3, 2008) (finding that $175 was a reasonable rate for experienced partners). Arneson's rate falls within the court's prior rulings.

### B. Number of Hours Spent on Litigation

Arneson requests that he be compensated for a total of 1,000 hours spent on this litigation. Arneson also acknowledges, however, that he has

"never kept time sheets, taken retainers or billed clients on an arbitrary hourly rate . . . ." *Id.* at 2. Because Arneson has not submitted records showing how much time he has spent on this litigation, the court must determine the reasonable amount of hours spent on this litigation. Argus requests compensation for the following tasks:

> litigating USDA's summary judgment motion on FOIA exemption 3; appealing that issue to the 8th Circuit Court of Appeals; litigating USDA's second summary judgment motion on FOIA exemption 4 and the newly added exemption 6; preparing for trial on FOIA exemptions 4 and 6; going through trial; writing post-trial briefs; preparing post-trial motions, including those for costs and attorney's fees.

*Id.* at 4, ¶ 15. Based on the work completed by Arneson, the court finds that 300 hours is a reasonable amount of time spent on this litigation and excludes any time prior to the commencement of the litigation. Thus, the lodestar is $60,000. The court presumes the lodestar is reasonable. *McDonald*, 860 F.2d at 1458. Neither Argus nor USDA ask for further consideration under the *Johnson* factors.

### C. Miscellaneous Costs

Argus also seeks miscellaneous costs that were not awarded as part of its bill of costs. "[O]ther litigation costs" are recoverable in a FOIA action under 5 U.S.C. § 552(a)(4)(E)(i). Such costs may include photocopying, postage, covers, exhibits, typing, transportation and parking expenses. *See Kuzma v. IRS*, 821 F.2d 930, 933 (2d Cir. 1987). After reviewing Argus's request, the court finds the following costs of litigation to be reasonable in the amounts requested by Argus: certified mailing, appellate brief and reply brief printing, St. Paul Hotel,

video-conferencing fee, and the expert witness fees (excluding the $80 witness fees awarded under the bill of costs). The court does not award the requested fee for Eighth Circuit admission. Attorney admission fees should be a prerequisite for any lawyer who is representing a client—and not a fee to be passed on to the client. As a result, the total miscellaneous costs to be awarded are $8,422.67.

**CONCLUSION**

Because Argus has substantially prevailed on its FOIA claim and the factors for awarding attorney fees tip in Argus's favor, it is

ORDERED that Argus's motion for attorney's fees (Docket 129) is granted in the amount of $68,422.67, which will be due and owing if the underlying order on the FOIA matter is affirmed by the Eighth Circuit Court of Appeals. Judgment will be entered at that time.

DATED this 3rd day of August, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE