UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ARGUS LEADER MEDIA, d/b/a Argus Leader, Plaintiff, vs. UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant, FOOD MARKETING INSTITUTE, Intervenor Defendant. | 4:11-CV-04121-KES ORDER DENYING MOTION FOR NEW TRIAL AND DENYING MOTION TO DEFER ACTION ON AWARD OF ATTORNEY'S FEES AND COSTS |

Plaintiff, Argus Leader Media, d/b/a Argus Leader, moves for a new trial and leave to amend pleadings and file new motions. Docket 215. Intervenor defendant, Food Marketing Institute (FMI), and trial defendant, the United States Department of Agriculture (USDA), oppose the motion. Dockets 222, 224. Argus also moves for an order deferring any action on the prior awards of attorney fees, or alternatively, an order upholding those awards. Docket 213. FMI and the USDA oppose the motion. Dockets 222, 224. For the reasons that follow, the court denies the motion for a new trial and the motion on attorney fees.

## BACKGROUND

A detailed recitation of the facts can be found in this court's Memorandum Opinion and Order (Docket 127) and the United States Supreme Court's opinion (*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2361-62 (2019)).

The case began when Argus brought a Freedom of Information Act (FOIA) suit against the USDA. Docket 1. Argus sought data on the Supplemental Nutrition Assistance Program (SNAP), formerly known as the Food Stamp Program. Docket 127 at 1-2. The USDA opposed the release of the data based on FOIA Exemption 4. *Id.* at 1, 2. Exemption 4 prevents the disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4).

After denying summary judgment (Docket 80), the court held a two-day bench trial. Docket 111. At trial, the sole issue was whether all the elements of Exemption 4 had been met. Docket 99. Witnesses for the USDA testified that retailers kept their store-level SNAP data confidential and that disclosure would threaten stores' competitive positions. *Food Mktg. Inst.*, 139 S. Ct. at 2361; Docket 127 at 3-5. Argus did not call any fact witnesses and did not dispute that retailers customarily kept the data private or that it had any competitive significance. *Food Mktg. Inst.*, 139 S. Ct. at 2361; *see* Docket 127 at 5. Instead, Argus took the position that any competitive harm associated with the disclosure would not be substantial. *Food Mktg. Inst.*, 139 S. Ct. at 2361; *see* Docket 127 at 5.

In applying the "competitive harm test," this court held that the USDA failed to meet its burden to show that Argus's FOIA request fell within Exemption 4 because the USDA did not prove that the requested data was confidential. Docket 127 at 14. The USDA failed to show that the release of the requested information would cause substantial competitive harm if it was disclosed. *Id.* The court entered judgment in favor of Argus. Docket 128. Two weeks after the court entered judgment in favor of Argus, on December 14, 2016, Argus filed a motion for attorney fees under 5 U.S.C. 552(a)(E). Docket 129. The USDA opposed the motion. Docket 169.

The USDA did not appeal the court's judgment. On January 27, 2017, FMI, a trade association that represents grocery retailers, filed an emergency motion to intervene under Federal Rule of Civil Procedure 24(a). Docket 138. The court granted the motion to intervene, and on February 14, 2017, FMI filed its own appeal. Dockets 143, 157. During this time, the USDA informed the court that it would not disclose the retailer's store-level SNAP data pending appeal. *Food Mktg. Inst.*, 139 S. Ct. at 2362.

On August 3, 2017, this court granted Argus's motion for attorney fees. Docket 193. This court stated that the attorney fees, in the amount of $68,422.67, would be due and owed if the underlying order on the FOIA matter was affirmed by the Eighth Circuit Court of Appeals. *Id.* at 10. On August 17, 2017, Argus moved for an order amending or supplementing the previous order awarding attorney fees. Docket 194. Argus sought to add $2,900 in attorney

fees for the fees incurred in filing the motion for attorney fees. *Id.* The court granted the motion. Docket 196.

On appeal at the Eighth Circuit Court of Appeals, FMI argued that the Court of Appeals should apply the ordinary meaning of "confidential" instead of the "substantial competitive harm" test. *Food Mktg. Inst.*, 139 S. Ct. at 2362. On May 8, 2018, the Court of Appeals rejected this argument and affirmed the district court's holding. *See Argus Leader Media v. USDA*, 889 F.3d 914 (8th Cir. 2018).

FMI filed a petition for a writ of certiorari to the United States Supreme Court on October 11, 2018. Docket 205. The United States Supreme Court granted FMI's petition for certiorari. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 915 (2019); Docket 207. The United States Supreme Court found that the information was "confidential" under Exemption 4. *Food Mktg. Inst.*, 139 S. Ct. at 2366. The Supreme Court reversed the judgment of the Eighth Circuit and remanded the case "for further proceedings consistent with [its] opinion." *Id.*

I. **Motion for New Trial**

   A. **Legal Standard**

A motion for new trial is governed by Rule 59 of the Federal Rules of Civil Procedure. Rule 59 states that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). "A new trial is appropriate when the first trial, through a

4

verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). On such a motion, the court may "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). Under Rule 59, the decision to grant a motion for a new trial is in the trial court's discretion. *Howard v. Mo. Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010). The trial court's "decision will not be reversed on appeal absent a clear abuse of that discretion." *Id.*

    **B.    The United States Supreme Court's Decision in *Food Marketing Institute v. Argus Leader Media***

In its decision, the Supreme Court analyzed Exemption 4's protection from mandatory disclosure of " 'commercial or financial information obtained from a person and privileged or confidential.' " *Food Mktg. Inst.*, 139 S. Ct. at 2362 (quoting 5 U.S.C. § 552(b)(4)). The Court rejected the "substantial competitive harm" test that was articulated in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). *Food Mktg. Inst.*, 139 S. Ct. at 2364. The Court noted that FOIA does not define the term "confidential." *Id.* at 2362. The Court looked back to the "ordinary, contemporary, common meaning" of confidential when FOIA was enacted in 1966. *Id.* (internal qoutations). In reviewing contemporary dictionaries, the court determined that there were two conditions "that might be required for information communicated to another to be considered confidential." *Id.* at 2363. These two

5

conditions are: (1) "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it" and (2) "information might be considered confidential only if the party receiving it provides some assurance that it will remain secret." *Id.* The Court held that at least the first condition must be met for information to be considered confidential under Exemption 4. *Id.* The Court found it "hard to see how information could be deemed confidential if its owner shares it freely." *Id.*

In applying its statutory interpretation to the facts, the Court found that both conditions were met. *Id.* As to the first condition, the Court stated that "there's no question that the Institute's members satisfy this condition; uncontested testimony established that the Institute's retailers customarily do not disclose store-level SNAP data or make it publicly available 'in any way.'" *Id.* The Court cited witnesses' testimony about only a small number of employees having access to such information. *Id.* For the second condition, the Court found that the retailers before them "clearly satisfy this condition too." *Id.* The Court noted that "the government has long promised them that it would keep their information private." *Id.*

In closing, the Court articulated its rule for confidential information under Exemption 4: "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366. The Court held that "the store-level SNAP data at issue here is confidential." *Id.* The Court reversed the

6

judgment of the Court of Appeals and remanded the case for further proceedings consistent with its opinion. *Id.*

### C. Whether the Supreme Court Resolved the Merits of the Case

Argus argues that basic fairness dictates that this court and Argus should have the opportunity to replay *Argus Leader v. USDA* under this new statutory interpretation from the Supreme Court. Docket 216 at 2. Argus bases its motion for a new trial on three main arguments. First, Argus argues that the Supreme Court created a new concept of "confidential" commercial information under Exemption 4. Docket 216 at 2. Second, Argus contends that the issue of whether the SNAP data was confidential under this new interpretation was not litigated at the 2016 court trial. *Id.* at 5. Third, Argus alleges that the Supreme Court's ruling strictly applies only to FMI members. Docket 229 at 3. FMI and USDA contend that the Supreme Court resolved the merits of this case and there is nothing left for this court to determine. Docket 222 at 1-2; Docket 224 at 12-13.

#### 1. Issues Litigated at Trial

Argus argues that neither of the two "newly" created conditions were litigated at the 2016 trial. Docket 216 at 5. The USDA argues that whether the information was confidential was an issue at trial. Docket 224 at 10. Both FMI and the USDA contend that the USDA offered testimony on the retailers' confidentiality customs at trial. *Id.* at 11; Docket 222 at 8.

In its Memorandum Opinion and Order, this court did not make explicit findings as to the two conditions articulated by the Supreme Court. *See* Docket

7

127. But the lack of these findings in this court's order does not mean that Argus should be granted a new trial. When a district court does not make findings on material questions of fact, the Supreme Court may "either determine these questions upon an independent examination of the testimony, or remand the case for further proceedings in order that they may be determined in the lower courts." *Gerdes v. Lustgarten*, 266 U.S. 321, 327 (1924). There are instances where the Supreme Court has remanded a case to the district court for determination of essential facts. *See id.* at 327-28 (reversing and remanding the case to the district court because the district court did not find material questions of fact that the decision ultimately depended on); *Mfrs.' Fin. Co. v. McKey*, 294 U.S. 442, 453-54 (1935) (remanding the case to the lower court because the question of the petitioner's legal rights were neither considered or determined by the lower court).

In the present case, after the Supreme Court articulated a test different from the one used by the Eighth Circuit to determine whether the information was confidential, the Court had two options. First, the Court could have remanded the case back to the district court for further proceedings on whether the evidence satisfied the newly articulated conditions. Or the Court could have determined that the information was confidential by doing its own independent examination of the testimony. Here, the Court chose to do the latter.

The Supreme Court found that the store-level SNAP data at issue here was confidential, and therefore, Exemption 4 applied. *Food Mktg. Inst.*, 139 S.

Ct. at 2366. In addition to this overall finding, the court applied the plain meaning of "confidential" to the facts before it and made explicit findings as to the two conditions. *See id.* at 2363. The majority stated that "there's no question that the Institute's members satisfy [the first] condition" because "uncontested testimony established that the Institute's retailers customarily do not disclose store-level SNAP data or make it publicly available 'in any way.'" *Id.* For the second condition, the majority stated that "the retailers before us clearly satisfy this condition too" because "the government has long promised them that it would keep their information private." *Id.* Here, the question of whether the store-level SNAP data was protected from mandatory disclosure under Exemption 4 was permissibly decided by the Supreme Court.

In making these findings, the Court presumably found the issues to be sufficiently litigated or else it would have remanded the case back to this court for additional litigation on the issues. In this court's review of the trial testimony, the Supreme Court's findings are supported by the evidence. At trial, several witnesses testified to their stores' secrecy regarding SNAP information. *See* Docket 185 at 175, 195 (Dryer Food's owner testifying that he does not make this information public because it is private and confidential); Docket 185 at 205 (K-Mart representative testifying that K-Mart takes steps to protect such information from disclosure and employees are regularly trained to maintain confidentiality); Docket 185 at 251 (National Grocers Association representative stating that retailers limit the information to "as few people as possible within their organization."); Docket 185-1 at 60 (Cumberland Farms

9

representative testifying that Cumberland Farms keeps the information among "a very tight group of the senior management team."). There was also evidence presented that the retailers signed up for the SNAP program with the understanding that the government would keep this information confidential. *See* Docket 185 at 230-31, 233 (K-Mart representative testifying that retailers submitted information to the government with the expectation that it would remain confidential); Docket 185-1 at 32 (National Grocers Association representative testifying that members who signed up for SNAP "always felt it was confidential, private, and it was never going to be released.").

Argus takes issue with how the Supreme Court handled this case. *See* Docket 216 at 6. Argus alleges that the Supreme Court "appeared to act as a trial court" by finding determinative facts had been proven. *Id.* Overall, the Supreme Court acted within its power to review the evidence at trial and make factual findings on issues litigated at trial. *See Gerdes*, 266 U.S. at 327-28. If Argus considered the Supreme Court's findings to be improper, Argus should have filed a motion for a rehearing with the Supreme Court, but it did not.

### 2. The Mandate Rule

The mandate rule binds this court to follow the ruling of the Supreme Court. *See Sibbald v. United States*, 37 U.S. 488, 488 (1838). "[W]hen a case has been decided by an appellate court and remanded for further proceedings, every question decided by the appellate court, whether expressly or by necessary implication, is finally settled and determined, and the court on remand is bound by the decree . . . ." *Thompson v. Comm'r*, 821 F.3d 1008,

1011 (8th Cir. 2016); *see also Sibbald*, 37 U.S. at 488. After remand, a lower court "has no authority to entertain a motion for new trial nor to enter any judgment or order not in conformity with the mandate, nor any judgment other than that directed or permitted by [the appellate] court." *Flowers v. United States*, 86 F.2d 79, 80-81 (8th Cir. 1936).

The Supreme Court decided the essential issue of whether the store-level SNAP data was protected from mandatory disclosure under Exemption 4. The Supreme Court made factual findings. *See Food Mktg. Inst.*, 139 S. Ct. at 2363. The Court then used these factual findings to find that the information satisfied both the first and second conditions. *See id.* Overall, the Supreme Court found that the store-level SNAP data was confidential, and therefore, Exemption 4 applied. *Id.* at 2366. The Supreme Court stated that "[a] reversal here thus would ensure exactly the relief the Institute requests." *Id.* at 2362.

After review, this court does not see any open, unresolved issues of law or questions of fact, and neither has Argus identified any undisposed of questions or issues. Thus, on remand, the only tasks left before this court are ministerial duties of vacating any orders that are now inconsistent with the Supreme Court's rulings and entering judgment in favor of the USDA.

    **3.    Narrow Holding**

Argus urges this court to construe the Supreme Court's holding narrowly and to limit the holding to FMI members. Docket 229 at 3. Argus argues that the Supreme Court's findings only apply to FMI because FMI retailers were the only retailers before the Supreme Court and the only retailers whose

11

customers' secrecy were denoted. *Id.* at 3, 14. Argus contends that it should get the chance to relitigate the new Exemption 4 interpretation as to all non-FMI SNAP retailers. *Id.* at 3.

The Supreme Court used several terms to describe the retailers. In its recitation of the facts, the Court uses the general term "retailers" to describe the evidence and testimony from trial. *See Food Mktg. Inst.*, 139 S. Ct. at 2362. Yet, in another section, the Supreme Court specifically mentions the Institute's members and the Institute's retailers. *See id.* at 2363. But in a later section, the Supreme Court uses the phrase "the retailers before us." *Id.* In its conclusion, the Court uses a more encompassing phrase for its holding by stating that "the store-level SNAP data at issue here is confidential[.]" *Id.* at 2366.

The court will not construe the holding to be applicable only to FMI members. The majority noted "uncontested testimony" that the Institute's members customarily did not disclose SNAP data, *see id.* at 2363, but the testimony at trial was not from FMI members, *see* Docket 127 at 3-5. The case tried by this court was not limited to FMI members; evidence and testimony at trial included non-FMI members like K-Mart, the National Grocers Association, Cumberland Farms, and Dryer Foods. *See* Docket 185 at 165-175, 200-205, 234-251; Docket 185-1 at 54-60. There was no evidence admitted at trial that any of these witnesses were members of FMI. FMI's involvement at the trial court level was limited to assisting the USDA with the case and submitting a declaration in support of the USDA's Exemption 4 summary judgment motion.

*See* Brief for Petitioner at 6, *Food Mktg. Inst.*, 139 S. Ct. 2356 (2019) (No. 18-481), 2019 WL 929007; Docket 59-4.

Additionally, at the appellate level, FMI's request for relief was not limited to its members. In its brief to the Supreme Court, FMI mentioned that Argus's requests for information would implicate approximately 321,000 retailer locations. *See* Brief for Petitioner at 6, *Food Mktg. Inst.*, 139 S. Ct. 2356 (No. 18-481). Throughout its brief, FMI uses the general term "retailers." *Id.* at 43-46, 51-53.

Thus, the court construes the Supreme Court's holding to encompass all the retailers that were included within the lower proceedings, not just FMI members. The court views this holding as consistent with the Supreme Court's opinion.

## II. Motion on Award of Attorney Fees and Costs

Argus first moves for an order deferring any action on the previous award of Argus's attorney fees and costs entered against the USDA (Dockets 193, 196). Docket 213. Argus argues that if a new trial is granted then there will not be a final resolution of the case involving Argus and the USDA. *Id.* The court denies the motion to defer because the court denied Argus's motion for a new trial.

Alternatively, if the court denied Argus's motion for a new trial, Argus moves for an order upholding the prior award of attorney fees and costs and compelling the USDA to pay Argus those amounts immediately. *Id.* The USDA

urges this court to deny the motion and enter an order vacating the prior award for attorney fees and costs. Docket 223 at 1.

### A. Legal Standard

FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The complainant carries the burden in establishing that it substantially prevailed. *Ginter v. IRS*, 648 F.2d 469, 471 (8th Cir. 1981). Because an award of attorney fees is not mandatory under FOIA, the court engages in a two-part inquiry: (1) whether the complainant is eligible for fees under the statute and (2) whether the complainant is entitled to fees under the statute. *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985); *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). "[W]hether to award attorney's fees is within the discretion of the district court and will not be overturned on appeal except for abuse of discretion." *Ginter*, 648 F.2d at 471.

### B. Eligibility for Attorney Fees

Argus argues that it is eligible for attorney fees because it substantially prevailed against the USDA under FOIA's fee-shifting statute. Docket 213. Argus contends that though it did not receive the requested documents, it obtained various forms of relief that should qualify under the statute. Docket 214 at 2-3. The USDA argues that prior awards should be vacated because Argus has not met its burden. Docket 223 at 3.

14

To be eligible for attorney fees, Argus must have substantially prevailed before this court by either obtaining relief through a judicial order or by the agency voluntarily or unilaterally changing its position. 5 U.S.C. § 552(a)(4)(E)(ii). A plaintiff can obtain relief through a judicial order by a court entering an order or judgment in plaintiff's favor granting the requested relief or a court issuing a scheduling order requiring the agency to produce the requested documents by a certain date. *See Ginter*, 648 F.2d at 471; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 39 (D.D.C. 2016); *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 64 (D.D.C. 2019).

Argus argues that it obtained FOIA relief through a judicial order. Docket 214 at 3-4. Argus contends that judicially ordered elimination of the government's secrecy excuses should qualify as substantial successes. *Id.* at 5. Argus relies on three orders from this case: (1) the Eighth Circuit's order "foreclosing USDA's Exemption 3 defense;" (2) this court's denial of summary judgment on Exemption 6; and (3) this court's decision in favor of Argus on Exemption 4. *Id.* (citing Dockets 44, 80, 127). The USDA argues that none of these orders resulted in the relief requested by Argus. Docket 223 at 5.

This court finds that Argus did not obtain its requested relief through a judicial order. As to the first and second orders relied on by Argus, the statute does not state that a party has substantially prevailed by obtaining success on legal arguments. The statute explicitly states, "a complainant has substantially prevailed if the complainant has obtained relief through . . . a judicial order."

15

5 U.S.C. § 552(a)(4)(E)(i)-(ii). The Eighth Circuit opinion and this court's summary judgment order did not grant Argus its requested relief. *See Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 (D.D.C. 2016) (holding denial of agency's motion for summary judgment did not constitute a judicial order on the requested relief and therefore did not suffice to entitle the requestor to attorney fees). Instead, the orders ruled in favor of Argus on legal issues, but Argus did not obtain its requested relief.

For the third order Argus relied on, this court's judgment in favor of Argus may have—for a time—allowed Argus to obtain its relief, but that judgment has now been reversed by the Supreme Court and vacated. "A judgment vacated on appeal is of no further force and effect." *Riha v. Int'l Tel. & Tel. Corp.*, 533 F.2d 1053, 1054 (8th Cir. 1976); *see also Creighton v. Anderson*, 922 F.2d 443, 449 (8th Cir. 1990) ("A vacated opinion has no further force and effect."). The information requested by Argus was not and will not be released by the USDA because the Supreme Court held that the information is confidential under Exemption 4. Ultimately, this court is entering judgment in favor of the USDA. Therefore, Argus has not substantially prevailed by a judicial order.

But Argus's failure to receive a favorable judgment does not "preclude an award of attorney's fees if the plaintiff's action helped induce disclosure of the requested documents[,]" *Ginter*, 648 F.2d at 471, which equates to "the agency voluntarily or unilaterally changing its position" under 5 U.S.C.

16

§ 552(a)(4)(E)(ii)(II). *See Consumers Council of Mo. v. Dep't of Health & Human Servs.*, 2015 WL 4876150, at *3 (E.D. Mo. Aug. 14, 2015). This is referred to as the "catalyst theory." *See Zarcon, Inc. v. N.L.R.B.*, 578 F.3d 892, 894 (8th Cir. 2009) (citing 5 U.S.C. § 552(a)(4)(E)(ii)(II)). Generally, under the catalyst theory, Argus must show "first, that prosecution of the action could reasonably be regarded as necessary to obtain the information, and, second, that the existence of the lawsuit had a causative effect on the release of the information." *Miller*, 779 F.2d at 1389; *see also Deininger & Wingfield, P.A. v. IRS*, 2009 WL 2241569, at *3 (E.D. Ark. July 24, 2009) (applying similar test after codification of catalyst theory).

Argus alleges that it obtained relief in the form of change in the federal government's policy. Docket 214 at 3, 5. Argus relies heavily on the Solicitor General's statements in its amicus brief to the Supreme Court. *Id.* at 6-7. The USDA argues that Argus has failed to establish a change in position and that a change in policy does not equate to a change in position. Docket 223 at 6-7.

Here, the catalyst theory is not applicable because there is no showing of a causation effect by Argus's lawsuit because the information was never released. Additionally, Argus did not present any case law where a change in policy satisfies the change in position standard. Generally, most cases analyzing a change in position are based on the release of records. *See, e.g., Deininger & Wingfield*, 2009 WL 2241569, at *3-4; *Consumers Council of Mo.* 2015 WL 4876150, at *4. Because Argus cannot establish that it is eligible for

the award, the court does not need to address the second prong of Argus's entitlement argument.

Lastly, Argus contends that the USDA voluntarily abandoned the case and that the USDA waived its right to contest the previous award of attorney fees. Docket 214 at 8. The ruling those awards were based on has been reversed, remanded, and vacated. The legal premise they were based on, i.e. Argus substantially prevailed, is no longer correct. Thus, even if the USDA waived them, the orders must still be vacated.

Overall, Argus has failed to meet its burden of showing that it substantially prevailed under FOIA's fee-shifting statute because there is no judicial order granting it its requested relief and the catalyst theory does not apply. Thus, the court denies Argus's motion for an order upholding the award of attorney fees and compelling the USDA to pay those amounts.

**CONCLUSION**

The Supreme Court found that the store-level SNAP data at issue here was confidential under Exemption 4. The Supreme Court resolved the merits of the case in its opinion. There is no question of fact or issue of law for this court to determine. Argus has failed to articulate a legitimate reason for this court to order a new trial. Additionally, Argus is not entitled to attorney fees and costs because it has failed to meet its burden of showing that it substantially prevailed under FOIA's fee-shifting statute. Thus, it is

ORDERED that Argus Leader Media's motion for a new trial (Docket 215) is denied.

IT IS FURTHER ORDERED that Argus Leader Media's motion to defer action on award of attorney fees and costs (Docket 213) is denied.

Dated April 1, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE